## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ROBERT AMBROSE, SCOTT BARNES, RICHARD CHAPMAN, RYAN CIRIGNANO, CHRIS FAUSSETT, MILAN GRUJIC, DAVID KELLER, JOHN KOBEL, DANIEL LAWSON, STEPHEN LUTSK, LORI MAGALLANES, NOAM MEIER, ERIC OSTRANDER, ROBERT OVERTURF, and MIKE WORONKO, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

GENERAL MOTORS LLC, a Delaware corporation,

Defendant.

**Case No. 4:19-cv-13449**

Honorable Stephanie Dawkins Davis
Magistrate Judge Elizabeth A. Stafford

## GENERAL MOTORS LLC'S MOTION TO DISMISS
## FIRST AMENDED CLASS ACTION
## COMPLAINT AND TO STRIKE CLASS ALLEGATIONS

General Motors LLC ("GM") respectfully moves (1) pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss Plaintiffs' nationwide Magnuson-Moss Warranty Act claim for lack of standing; (2) pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all claims in Plaintiffs' First Amended Class Action Complaint because they do not sufficiently plead the statutory requirements and elements of their causes of action; and, in the alternative, (3) pursuant to Federal Rules of Civil Procedure 12(f) and 23, to strike

Plaintiffs' class allegations. The grounds and legal authority are set forth in the accompanying memorandum.

Pursuant to Local Rule 7.1(a), GM requested Plaintiffs' consent to this motion, and Plaintiffs do not consent.

November 18, 2020                         Respectfully submitted,

                                          /s/ Mohamed M. Awan
                                          Jeffrey K. Lamb
                                          Mohamed M. Awan
                                          Laura E. Biery
                                          Nicholas A. Burandt
                                          HONIGMAN LLP
                                          2290 First National Building
                                          660 Woodward Avenue
                                          Detroit, MI 48226-3506
                                          Telephone: (313) 465-7000
                                          Facsimile: (313) 465-7405
                                          jlamb@honigman.com
                                          mawan@honigman.com
                                          lbiery@honigman.com
                                          nburandt@honigman.com

                                          *Counsel for General Motors LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ROBERT AMBROSE, SCOTT BARNES, RICHARD CHAPMAN, RYAN CIRIGNANO, CHRIS FAUSSETT, MILAN GRUJIC, DAVID KELLER, JOHN KOBEL, DANIEL LAWSON, STEPHEN LUTSK, LORI MAGALLANES, NOAM MEIER, ERIC OSTRANDER, ROBERT OVERTURF, and MIKE WORONKO, on behalf of themselves and all others similarly situated,

     Plaintiffs,

   v.

GENERAL MOTORS LLC, a Delaware corporation,

     Defendant.

**Case No. 4:19-cv-13449**

Honorable Stephanie Dawkins Davis
Magistrate Judge Elizabeth A. Stafford

## MEMORANDUM IN SUPPORT OF GENERAL MOTORS LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND TO STRIKE CLASS ALLEGATIONS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iv

STATEMENT OF ISSUES PRESENTED ......................................................... xiii

STATEMENT OF MOST APPROPRIATE AUTHORITY ................................ xv

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS .................................................................................. 3

I.     The Alleged Defect ................................................................................ 3

II.    GM's Limited Warranty ........................................................................ 5

III.   The Recall ............................................................................................. 6

IV.   Customer Complaints ........................................................................... 7

LEGAL STANDARD ......................................................................................... 8

ARGUMENT ...................................................................................................... 9

I.     Counts I-V: Warranty Claims .............................................................. 9

A.    Plaintiffs Fail to State Express Warranty Claims (Count II). ............. 9

       1.   *Plaintiffs Do Not Allege Sufficient Facts to Support a Breach of the Limited Warranty.* ............................................................ 9

       2.   *GM's Warranty Limits are Not Unconscionable.* ................................ 10

       3.   *Certain Plaintiffs Never Sought or Received Repairs from a GM-Authorized Dealership and Cannot Plead Viable Warranty Claims.* ................................................................... 11

B.    Plaintiffs Fail to State Implied Warranty Claims (Count III). ............ 12

       1.   *Any Implied Warranty is Limited to the Terms of GM's Express Limited Warranty.* ............................................................... 12

       2.   *Plaintiffs' Vehicles Were Merchantable At the Time of Sale* ............... 13

C.    Plaintiffs' Warranty Claims Must be Dismissed For Lack of Notice. ....................... 16

i

D.  Plaintiffs' Warranty Claims are Barred by the Applicable Statute of Limitations in Eleven of Twelve States at Issue. ........................................ 18

E.  Nine Plaintiffs' Warranty Claims Must be Dismissed for Lack of Privity. ............... 20

F.  The California Plaintiffs' Song-Beverly Claims Fail. .................................................. 21

G.  No Plaintiffs State a Claim under MMWA. ................................................................. 22

II.  Counts VI-XVIII: Fraud-Based Claims .......................................................................... 22

A.  Plaintiffs' Fraud-Based Claims Fail Under Rule 9(b). ................................................ 23

    1.  *Rule 9(b) Applies to Counts VI-XVIII.* .................................................. 23

    2.  *Plaintiffs Do Not Plead Counts VI-XVIII with Particularity.* ............. 23

B.  Plaintiffs Fail to State a Claim for Fraudulent Concealment. ...................................... 27

    1.  *Plaintiffs Cannot Show that GM had Knowledge of the Alleged Defect at the Time of Sale* ...................................................................... 28

    2.  *Plaintiffs Do Not Allege That GM Had A Duty To Disclose.* ............. 32

    3.  *Nine Plaintiffs' Fraudulent Concealment Claims are Time-barred.* ..................................................................................................... 33

    4.  *Multiple Plaintiffs' Fraudulent Concealment Claims are Barred by the Economic Loss Rule.* ........................................................ 34

C.  Plaintiffs Fail to State a Claim for Unjust Enrichment. ............................................... 35

D.  State-Specific Defects in Consumer Protection Claims. .............................................. 36

    1.  *Plaintiffs' Claims Under the Consumer Protection Acts of Connecticut, Florida, and New York are Untimely.* ........................... 36

    2.  *The Michigan Consumer Protection Act Does Not Apply.* ................. 37

    3.  *The Court Should Strike Plaintiffs' Class Allegations Brought on Behalf of the South Carolina Class.* ................................................ 38

III.  The Court Should Strike Plaintiffs' Nationwide Class Claims (Counts I-III, VI, and VII). ................................................................................................................ 39

CONCLUSION ............................................................................................................ 40

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Arris Cable Modem Consumer Litig.*,
   No. 17-CV-01834, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ........................23

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of
   Carpenters*,
   459 U.S. 519 (1983)........................................................................................8

*In re Auto. Parts Antitrust Litig.*,
   No. 12-MD-02311, 2015 WL 13834708 (E.D. Mich. May 1, 2015)................38

*Auto. Sales, Inc. v. Freet*,
   725 N.E.2d 955 (Ind. Ct. App. 2000) .................................................36

*Bailey v. Interbay Funding, Inc.*,
   No. 3:17-CV-1457, 2018 WL 1660553 (D. Conn. April 4, 2018)....................36

*Beck v. FCA US LLC*,
   273 F. Supp. 3d 735 (E.D. Mich. 2017) ............................................32

*Berenblat v. Apple, Inc.*,
   Nos. 08-4969, 09-1649, 2010 WL 1460297 (N.D. Cal. Apr. 9,
   2010) ...........................................................................................29

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ...........................................................14

*In re Bridgestone/Firestone, Inc.*,
   288 F.3d 1012 (7th Cir. 2002) .........................................................40

*Bussian v. DaimlerChrysler Corp.*,
   411 F. Supp. 2d 614 (M.D.N.C. 2006) .......................................14, 15

*Cardenas v. Toyota Motor Corp.*,
   418 F. Supp. 3d 1090 (S.D. Fla. 2019) .............................................35

*Chaudoin v. Thor Motor Coach, Inc.*,
   No. 15-13871, 2017 WL 3485803 (E.D. Mich. Aug. 15, 2017) .................12, 38

iv

*Chiarelli v. Nissan N. Am., Inc.*,
    No. 14-cv-4327, 2015 WL 5686507 (E.D.N.Y. Sept. 25, 2015)..................14, 16

*Cipollone v. Liggett Grp., Inc.*,
    505 U.S. 504 (1992)..........................................................................................9

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) .........................................................................11

*Cole v. General Motors Corp.*,
    484 F.3d 717 (5th Cir. 2007) ...........................................................................40

*Darne v. Ford Motor Co.*,
    No. 13 C 03594, 2015 WL 9259455 (N.D. Ill. Dec. 18, 2015)........................11

*Davidson v. Apple*,
    No. 16-CV-04942, 2018 WL 2325426 (N.D. Cal. May 8, 2018) .....................38

*Dawson v. Gen. Motors LLC*,
    No. CV 19-8680, 2019 WL 3283046 (D.N.J. July 22, 2019) ...........................13

*Delgado v. Ocwen Loan Servicing, LLC*,
    No. 13-CV-4427, 2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017) ......................38

*Duffie v. Michigan Grp., Inc. - Livingston*,
    No. 14-CV-14148, 2016 WL 8259511 (E.D. Mich. Jan. 15, 2016)..................35

*Eisen v. Porsche Cars N. Am.*,
    2012 WL 841019 (C.D. Cal. 2012) ............................................................26, 28

*Farm Bureau Gen. Ins. Co. of Mich. v. Blue Cross Blue Shield*,
    655 F. App'x 483 (6th Cir. 2016) ......................................................................5

*Fejzulai v. Sam's W., Inc.*,
    205 F. Supp. 3d 723 (D.S.C. 2016) ..................................................................38

*Feliciano v. Gen. Motors LLC*,
    No. 14 Civ. 06374 (AT), 2016 WL 9344120 (S.D.N.Y. Mar. 31,
    2016) .................................................................................................................26

*Ferris v. Ford Motor Co.*,
    No. 18-cv-03216, 2019 WL 1100376 (N.D. Cal. Mar. 8, 2019)......................22

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
No. 96–3125, 2001 WL 1266317 (D.N.J. Sept. 30, 1997) .................................14

*In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*,
MDL No. 1718, 2007 WL 2421480 (E.D. Mich. Aug. 24, 2007) ...........8, 24, 33

*In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*,
406 F. Supp. 3d 618 (E.D. Mich. 2019) ......................................................11, 12

*In re Gen. Motors LLC Ignition Switch Litig.*,
257 F. Supp. 3d 372 (S.D.N.Y. 2017), *modified on reconsideration by*, Nos. 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) ................................................................................................................30

*Gorman v. Am. Honda Motor Co., Inc.*,
839 N.W.2d 223 (Mich. Ct. App. 2013) ............................................................17

*Greenbroz, Inc. v. Laeger Built, LLC*,
No. 16-cv-02946, 2017 WL 3622308 (S.D. Cal. Aug. 22, 2017) ......................16

*Hall v. Gen. Motors, LLC*,
No. 19-CV-10186, 2020 WL 1285636 (E.D. Mich. Mar. 18, 2020) ..........*passim*

*Jimenez v. Ford Motor Credit Co.*,
No. 322909, 2015 WL 9318913 (Mich. Ct. App. Dec. 22, 2015) .....................38

*Johnston v. PhD Fitness, LLC*,
No. 16-cv-14152, 2018 WL 646683 (E.D. Mich. Jan. 31, 2018) ......................18

*Kahn v. Volkswagen of Am., Inc.*,
No. FSTCV075004090S, 2008 WL 590469 (Conn. Sup. Ct. Feb. 13, 2008) ............................................................................................................20

*Kampuries v. Am. Honda Motor Co.*,
204 F. Supp. 3d 484 (E.D.N.Y. 2016) ...............................................................33

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......................................................23, 24, 26, 28

*Keegan v. Am. Honda Motor Co.*,
838 F. Supp. 2d 929 (C.D. Cal. 2012) ..............................................................14

*League of United Latin Am. Citizens v. Bredesen*,
   500 F.3d 523 (6th Cir. 2007) .................................................................8

*Liss v. Lewiston-Richards, Inc.*,
   478 Mich. 203 (2007) ........................................................................37

*Mandani v. Volkswagen Grp. of Am., Inc.*,
   No. 17-CV-07287, 2019 WL 652867 (N.D. Cal. Feb. 15, 2019).......................32

*Martin v. Julius Dierck Equip. Co.*,
   374 N.E.2d 97 (N.Y. 1978)...................................................................20

*Matanky v. Gen. Motors LLC*,
   370 F. Supp. 3d 772 (E.D. Mich. 2019) .........................................................27

*McMahon v. CitiMortgage, Inc.*,
   No. 10-14265, 2011 WL 2173916 (E.D. Mich. June 2, 2011)...........................8

*Mellander v. Kileen*,
   407 N.E.2d 1137 (Ill. Ct. App. 1980) .........................................................20

*Mexia v. Rinker Boat Co.*,
   95 Cal. Rptr. 3d 285 (Cal. Ct. App. 2009).........................................................22

*Miller v. Gen. Motors, LLC*,
   No. 17-CV-14032, 2018 WL 2740240 (E.D. Mich. June 7, 2018).............12, 23

*Ocana v. Ford Motor Co.*,
   992 So. 2d 319 (Fla. Ct. App. 2008)...................................................20

*Oddo v. Arcoaire Air Conditioning & Heating*,
   No. 8:15-cv-01985, 2017 WL 372975 (C.D. Cal. Jan. 24, 2017) ......................14

*Oliver v. Funai Corp.*,
   No. 14-cv-04532, 2015 WL 9304541 (D.N.J. Dec. 21, 2015) ..........................29

*In re OnStar Contract Litig.*,
   600 F. Supp. .....................................................................................12

*In re OnStar Contract Litig.*,
   600 F. Supp. 2d 861 (E.D. Mich. 2009) .........................................................11

*In re Packaged Ice Antitrust Lit.*,
  779 F. Supp. 2d 642 (E.D. Mich. 2011) ...........................................................39

*Paydar v. Jaguar Land Rover N. Am., LLC*,
  No. 19-CV-0058-BAS-WVG, 2019 WL 3253068 (S.D. Cal. July
  19, 2019) ..................................................................................................21

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)..................................................................................39

*Pilgrim v. Universal Health Card, LLC*,
  660 F. 3d 943 (6th Cir. 2011) ...........................................................39

*Power Process Eng'g Co., Inc. v. ValvTechnologies, Inc.*,
  No. 16-CV-11524, 2016 WL 7100504 (E.D. Mich. Dec. 6, 2016)....................35

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
  683 F.3d 239 (6th Cir. 2012) ...........................................................24

*Resnick v. Hyundai Motor Am., Inc.*,
  No. 16-cv-00593, 2016 WL 9455016 (C.D. Cal. Nov. 14, 2016)....................29

*Rosenbaum v. Toyota Motor Sales, USA, Inc.*,
  No. 16-CV-12645, 2016 WL 9775018 (E.D. Mich. Oct. 21, 2016) ...........13, 38

*Rosipko v. FCA US, LLC*,
  No. 15-11030, 2015 WL 8007649 (E.D. Mich. Dec. 7, 2015)..........................17

*Schechner v. Whirlpool Corp.*,
  237 F. Supp. 3d 601 (E.D. Mich. 2017) ...........................................................36

*In re Seagate Tech., LLC*,
  233 F. Supp. 3d 776 (N.D. Cal. 2017) (dismissing California
  implied warranty claims for lack of privity with manufacturer) ......................20

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
  No. MDL-1703, Nos. 05 4742, 05 C 2623, 2009 WL 937256 (N.D.
  Ill. Apr. 6, 2009) ..................................................................................27

*Sharrard, McGee & Co., P.A. v. Suz's Software, Inc.*,
  396 S.E.2d 815 (N.C. Ct. App. 1990)..................................................................20

*Sheris v. Nissan N. Am., Inc.*,
 No. 07–2516, 2008 WL 2354908 (D.N.J. June 3, 2008)....................................14

*Sloan v. Gen. Motors LLC*,
 No. 16-cv-07244, 2017 WL 3283998 (N.D. Cal., Aug. 1, 2017)......................29

*Smith v. LG Elecs. U.S.A., Inc.*,
 No. C 13–4361, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014)..........................11

*Sneyd v. Int'l Paper Co.*,
 142 F. Supp. 2d 819 (E.D. Mich. 2001) ......................................................27, 32

*Solo v. UPS Co.*,
 819 F.3d 788 (6th Cir. 2016) ...........................................................................35

*In re Sony Vaio Computer Notebook Litig.*,
 No. 09cv2109, 2010 WL 4262191 (S.D. Cal. Oct. 28, 2010) ...........................10

*Speier-Roche v. Volkswagen Grp. of Am. Inc.*,
 No. 14-20107-CIV, 2014 WL 1745050 (S.D. Fla. April 30, 2014)..................37

*Sperry v. Crompton Corp.*,
 26 A.D.3d 488 (N.Y. App. Div. 2006) ..............................................................36

*Statler v. Dell, Inc.*,
 841 F. Supp. 2d 642 (E.D.N.Y. 2012) ...............................................................37

*Storey v. Attends Healthcare Prod., Inc.*,
 No. 15-cv-13577, 2016 WL 3125210 (E.D. Mich. June 3, 2016)......................36

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
 992 F. Supp. 2d 962 (C.D. Cal. 2014) ...............................................................15

*Temple v. Fleetwood Enters., Inc.*,
 133 F. App'x 254 (6th Cir. 2005) .......................................................................22

*Tex Enters., Inc. v. Brockway Standard, Inc.*,
 66 P.3d 625 (Wash. 2003) ................................................................................20

*Travelers Prop. & Cas. Ins. Corp. v. Yankee Gas Servs. Co.*,
 2000 WL 775558 (Conn. Super. Ct. May 19, 2000) .........................................17

*Troup v. Toyota Motor Corp.*,
545 F. App'x 668 (9th Cir. 2013) ...................................................................16

*Weidman v. Ford Motor Co.*,
No. 18-cv-12719, 2019 WL 3003693 (E.D. Mich. July 10, 2019) ...................15

*William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*,
677 F. App'x 979 (6th Cir. 2017) ...................................................................24

*Williams v. Scottrade, Inc.*,
No. 06-10677, 2006 WL 2077588 (E.D. Mich. July 24, 2006).........................24

*Williams v. Yamaha Motor Corp.*,
No. 13-05066, 2015 WL 13626022 (C.D. Cal. Jan. 7, 2015).....................21, 30

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ...................................................................28, 29

*Wozniak v. Ford Motor Co.*,
No. 2:17-cv-12794, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019)...............28, 30

*Yates v. Ortho-McNeil-Janssen Pharm., Inc.*,
808 F.3d 281 (6th Cir. 2015) .........................................................................13

*Zanger v. Gulf Stream Coach, Inc.*,
2006 WL 1494952 (E.D. Mich. May 25, 2006) ...............................................22

**STATUTES**

15 U.S.C. § 2310(e) .............................................................................................16

Cal. Com. Code § 2314(2)(c)................................................................................14

Cal. Com. Code § 2607(3)(A)...............................................................................16

Cal. Com. Code § 2725.................................................................................19, 21

California's Song-Beverly Consumer Warranty Act..........................................19, 21

Conn. Gen. Stat. § 42-110g(f)..............................................................................36

Conn. Gen. Stat. § 42a-2-725...............................................................................19

Conn. Gen. Stat. § 52-577....................................................................................34

Fla. Stat. § 95.11 ...............................................................................19, 34, 37

Fla. Stat. § 672.607(3)(a) ...........................................................................16

G.S. Chapter 99B ........................................................................................20

Ill. Comp. Stat. 5/2-607(3)(a) ....................................................................16

Ill. Comp. Stat. 5/2-725 ..............................................................................19

Ill. Comp. Stat. 5/13-215 ............................................................................34

Ind. Code § 26-1-2-725 ...............................................................................19

Ind. Code § 34-11-2-7(4) ............................................................................34

Magnuson-Moss Warranty Act.........................................................1, 2, 22

Mich. Comp. Laws § 440.2725 ...................................................................19

Mich. Comp. Laws § 445.904(1)(a) ............................................................37

Mich. Comp. Laws § 600.5813 ...................................................................34

N.C. Gen. Stat. § 1-52(9) ............................................................................34

N.C. Gen. Stat. § 25-2-607(3)(a) ................................................................16

N.C. Gen. Stat. § 25-2-725 ..........................................................................19

N.J. Stat. § 2A:14-1 .....................................................................................34

N.J. Stat. § 12A:2-607(3)(a) ........................................................................16

N.J. Stat. § 12A:2-725 .................................................................................19

N.Y. C.P.L.R. § 213 ...............................................................................34, 37

N.Y. Gen. Bus. Law § 349 ...........................................................................37

N.Y. U.C.C...............................................................................................16, 19

S.C. Code § 15-3-530(7) ..............................................................................34

S.C. Code § 36-2-607(3)(a) .........................................................................16

S.C. Code § 36-2-725(1) ........................................................................... 19

S.C. Code § 39-5-140(a) ........................................................................... 38

S.D. Codified Laws § 15-2-13(6) .............................................................. 34

S.D. Codified Laws § 57A-2-607(3)(a) ..................................................... 16

S.D. Codified Laws § 57A-2-725 .............................................................. 19

U.C.C. § 2-607(3)(a) ................................................................................. 16

U.C.C. § 2-725(1), (2) ............................................................................... 18

Wash. Rev. Code § 4.16.080(4) ................................................................ 34

Wash. Rev. Code § 62A.2-607(3)(a) ......................................................... 17

Wash. Rev. Code § 62A.2-725 .................................................................. 19

## <u>STATEMENT OF ISSUES PRESENTED</u>

### <u>Warranty Claims</u>

1.   Should this Court dismiss Plaintiffs' express warranty claims because they do not allege sufficient facts to support a breach of GM's Limited Warranty?

2.   Should this Court dismiss Plaintiffs' express warranty claims because GM's warranty limits are not unconscionable?

3.   Should this Court dismiss certain Plaintiffs' express warranty claims because those Plaintiffs never sought, or received, repairs from a GM-authorized dealership?

4.   Should this Court dismiss Plaintiffs' implied warranty claims because their vehicles are outside the term of the implied warranty period?

5.   Should this Court dismiss Plaintiffs' implied warranty claims for failure to allege that their vehicles were unmerchantable at the time they left GM's control?

6.   Should this Court dismiss certain Plaintiffs' implied warranty claims because those Plaintiffs cannot recover economic losses for breach of implied warranty in the absence of privity?

7.   Should this Court dismiss certain Plaintiffs' express and implied warranty claims for failure to provide notice as required under the laws of each applicable state?

8.   Should this Court dismiss certain Plaintiffs' express and implied warranty claims because those Plaintiffs' claims are barred by the applicable statute of limitations, or are otherwise time-barred?

### <u>Magnuson-Moss Warranty Act Claim</u>

9.   Should this Court dismiss Plaintiffs' Magnuson-Moss Warranty Act claims because Plaintiffs have not alleged viable state law warranty claims?

### <u>Fraud-Based Claims</u>

10.   Should this Court dismiss Plaintiffs' fraud-based claims because they do not plead factual allegations with particularity as required by Rule 9(b)?

11.   Should this Court dismiss Plaintiffs' fraudulent concealment claims for failure to allege a duty to disclose because (i) they do not allege facts demonstrating GM's

knowledge of a defect, and (ii) they do not allege facts showing GM's "exclusive" or "superior knowledge"?

12.   Should this Court dismiss certain Plaintiffs' fraudulent concealment claims because they are time-barred?

13.   Should this Court dismiss certain Plaintiffs' fraudulent concealment claims because they are barred by the economic loss doctrine?

14.   Should this Court dismiss Plaintiffs' unjust enrichment claims because an express contract governs the parties' relationships?

## State Consumer Protection Act Claims

15.   Should this Court dismiss California Plaintiffs' Song-Beverly Consumer Warranty Act claims because they are time-barred?

16.   Should this Court dismiss Connecticut, Florida, and New York Plaintiffs' consumer protection act claims because they are time-barred?

17.   Should this Court dismiss Michigan Plaintiff's claim under the Michigan Consumer Protection Act because the statute exempts the manufacture and sale of motor vehicles?

18.   Should this Court dismiss Plaintiffs' class allegations brought on behalf of the South Carolina class because claims based on the South Carolina Unfair Trade Practices Act must be brought by plaintiffs on an individual rather than collective basis?

## Class Allegations

19.   Should this Court strike Plaintiffs' nationwide class allegations because they lack standing and have not satisfied the statutory prerequisites for a class action?

GM answers "yes" to each of these questions.

## STATEMENT OF MOST APPROPRIATE AUTHORITY

**Express Warranty Claims**

*Cipollone v. Liggett Grp., Inc*., 505 U.S. 504 (1992)

*In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig*., 406 F. Supp. 3d 618 (E.D. Mich. 2019)

*In re OnStar Contract Litig*., 600 F. Supp. 2d 861 (E.D. Mich. 2009)

**Implied Warranty Claims**

*Chaudoin v. Thor Motor Coach, Inc.*, No. 15-13871, 2017 WL 3485803 (E.D. Mich. Aug. 15, 2017)

*Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281 (6th Cir. 2015)

**Magnuson-Moss Warranty Act Claims**

*Zanger v. Gulf Stream Coach, Inc*., 2006 WL 1494952 (E.D. Mich. May 25, 2006)

*Temple v. Fleetwood Enters., Inc*., 133 F. App'x 254 (6th Cir. 2005)

**Fraudulent Concealment Claims**

*Republic Bank & Tr. Co. v. Bear Stearns & Co*., 683 F.3d 239 (6th Cir. 2012)

*William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 F. App'x 979 (6th Cir. 2017)

*Hall v. Gen. Motors, LLC*, No. 19-CV-10186, 2020 WL 1285636 (E.D. Mich. Mar. 18, 2020)

*Beck v. FCA US LLC*, 273 F. Supp. 3d 735 (E.D. Mich. 2017)

*Sneyd v. Int'l Paper Co.*, 142 F. Supp. 2d 819 (E.D. Mich. 2001)

**Unjust Enrichment Claims**

*Solo v. UPS Co.*, 819 F.3d 788 (6th Cir. 2016)

**State Consumer Protection Act Claims**

*Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285 (Cal. Ct. App. 2009)

*A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955 (Ind. Ct. App. 2000)

*Bailey v. Interbay Funding, Inc.*, No. 3:17-CV-1457, 2018 WL 1660553 (D. Conn. April 4, 2018)

*Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107-CIV, 2014 WL 1745050 (S.D. Fla. April 30, 2014)

*Statler v. Dell, Inc.*, 841 F. Supp. 2d 642 (E.D.N.Y. 2012)

*Jimenez v. Ford Motor Credit Co.*, No. 322909, 2015 WL 9318913 (Mich. Ct. App. Dec. 22, 2015)

## Class Allegations

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)

*In re Packaged Ice Antitrust Lit.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011)

*Pilgrim v. Universal Health Card, LLC*, 660 F. 3d 943 (6th Cir. 2011)

# INTRODUCTION

Plaintiffs are owners of model year ("MY") 2015-2016 Chevrolet Colorado or GMC Canyon pickup trucks who claim to have suffered out-of-pocket losses stemming from an alleged failure of the power steering feature in their vehicles.  All the Plaintiffs drove their vehicles for many years and for many miles—in each case, past the warranty period—without any complaints.  Now, the Plaintiffs together conclude that, based on their various experiences, ***all*** of the more than 270,000 MY15-16 Colorados and Canyons purchased or leased in the United States (the "Class Vehicles") are defective.  According to Plaintiffs, GM breached its express and implied warranties, as well as certain statutory and common-law duties, by not disclosing the Alleged Defect to Plaintiffs and other consumers.

Plaintiffs do not (and cannot) allege sufficient facts to support these theories.  They mostly rely on the fact that GM recalled a small number of MY2015 Colorados/Canyons built over fewer than three months—for a specific electrical problem relating to one component of the power steering system—to make a blanket claim that this very same problem exists in the rest of the Class Vehicles.  But Plaintiffs fail to make any connection between their vehicles and the small number of MY2015 vehicles that GM recalled, let alone the non-recalled putative Class Vehicles spanning two production years.  Most importantly, they fail to allege any facts demonstrating that the various issues they allege to have experienced are related in any way to the recall.

Plaintiffs bring this case under federal law and the laws of the various states in which

1

they reside.  They assert causes of action for: breach of express warranties (Counts II and IV) and implied warranties (Counts III and V); fraudulent concealment (Count VI); unjust enrichment (VII); and the violation of various state-specific consumer protection statutes (Counts VIII-XVIII).  They also assert a federal claim under the Magnuson-Moss Warranty Act ("MMWA") on behalf of a putative nationwide class comprising every individual who bought or leased a Class Vehicle (Count I).  As outlined below and detailed throughout this memorandum, all eighteen Counts are facially defective and should be dismissed.

- *First*, Plaintiffs fail to state a claim for breach of express warranty because the Alleged Defect manifested outside the warranty period, and Plaintiffs neither sought, nor were ever denied, warranty coverage by GM for the Alleged Defect.  Additionally, Plaintiffs never gave GM pre-suit notice of the alleged warranty breaches—a prerequisite for stating an express or implied warranty claim.

- *Second*, Plaintiffs fail to state a claim for breach of implied warranty because (1) their vehicles operated without issue for many years and many miles—and were thus clearly merchantable—before any Alleged Defect supposedly manifested, (2) GM's Limited Warranty expressly makes any implied warranty co-extensive with the Limited Warranty's durational and mileage limitations, and (3) Plaintiffs failed to provide GM with the required pre-suit notice.

- *Third*, Plaintiffs fail to state a claim under the Magnuson-Moss Warranty Act because Plaintiffs cannot assert any viable state law warranty claim.

- *Fourth*, Plaintiffs' fraud-based claims are inherently flawed because they fail to allege any specific facts establishing that, at the time Plaintiffs purchased their vehicles, GM was aware of the Alleged Defect and had a duty to disclose it.  Several of Plaintiffs' fraud-based claims are also barred by the economic loss rule, statutes of limitation, and state-law preemption.

**STATEMENT OF FACTS**

## I.       The Alleged Defect

The named Plaintiffs are 15 residents of 12 different states, who purchased or leased

a MY15 or MY16 Colorado or Canyon:

- Robert Ambrose resides in New Jersey and purchased a new 2016 Colorado there in March 2016;

- Scott Barnes resides in Florida and purchased a new 2016 Colorado there in August 2015;

- Richard Chapman resides in Washington and leased a new 2015 Canyon there in April 2015;

- Ryan Cirignano resides in South Carolina and purchased a new 2016 Colorado there in August 2016;

- Chris Faussett resides in California and purchased a new 2016 Colorado there in September 2016;

- Milan Grujic resides in Illinois and purchased a new 2015 Colorado there in December 2014;

- David Keller resides in South Carolina and purchased a new 2015 Canyon in North Carolina in September 2016;

- John Kobel resides in New York and purchased a new 2015 Colorado there in April 2016;

- Daniel Lawson resides in Indiana and purchased a new 2016 Canyon there in September 2015;

- Stephen Lutsk resides in California and purchased a new 2015 Colorado there in November 2014;

- Lori Magallanes resides in California and purchased a new 2016 Colorado there in August 2016;

- Noam Meir resides in Connecticut and purchased a 2015 Colorado there in January 2015;

- Eric Ostrander resides in North Carolina and purchased a new 2016 Canyon in California in February 2016;

- Robert Overturf resides in South Dakota and purchased a new 2015 Colorado there in March 2015; and

- Michael Woronko resides in Michigan and purchased a new 2016 Colorado there in June 2016.

(*See* Amended Complaint ("Compl."), ECF No. 26, PageID.619-621, ¶¶ 14-28, PageID.641-668, ¶¶ 65-157.)

Plaintiffs collectively state that, unbeknownst to them, their vehicles all came with an inherently-defective electronic power steering torque assist sensor (the "Alleged Defect"). (*Id.* at PageID.641-668, ¶¶ 65-157.) Each Plaintiff asserts that he or she first experienced the Alleged Defect at various times but, in each case, after expiration of their respective vehicles' warranty. After experiencing the Alleged Defect, some Plaintiffs sought repairs from a GM-authorized dealership; some sought to make the necessary repairs themselves; and some did not seek or make any repairs. (*See id.*) They all, however, claim that they have been harmed by the Alleged Defect and what they see as GM's refusal to acknowledge it or include it within its warranties.

Based on their various experiences, Plaintiffs claim that the Alleged Defect affects every MY2015 and MY2016 Chevy Colorado and GMC Canyon vehicle that was sold or leased to a U.S. consumer. (*Id.* at PageID.616, ¶ 3.)

4

## II.   GM's Limited Warranty

Plaintiffs claim the Alleged Defect should be covered by GM's Limited Warranty

(the "Limited Warranty").[1] The Limited Warranty provides in pertinent part:

> **Repairs Covered:** The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period. […]
>
> **Bumper to Bumper Coverage:** The complete vehicle is covered for 3 years or 36,000 miles, whichever comes first for Chevrolet and GMC models. […]
>
> **Obtaining Repairs:** To obtain warranty repairs, take the vehicle to a [GM] dealer facility within the warranty period and request the needed repairs.

(*See, e.g.*, Ex. 1 (2016 Colorado Warranty) at 4; Ex. 2 (2016 Canyon Warranty) at 4.)

At the times that they claim to have experienced the Alleged Defect, Plaintiffs'

vehicles were outside the Bumper-to-Bumper Warranty period that would apply to an

inoperative power steering sensor—*i.e.*, more than three years had passed since Plaintiffs

purchased their vehicles, or they had driven their vehicles more than 36,000 miles, or both.

They nevertheless claim that GM refused to honor the Limited Warranty.  They also allege

that GM had "long known" about the Alleged Defect, (Compl., ECF No. 26, PageID.618, ¶

20), based on "GM's own knowledge about the material, design, and manufacture of the

---

[1] GM's Limited Warranty includes its 3-year/36,000-mile Bumper-to-Bumper Limited Warranty (the "Bumper-to-Bumper Warranty") and its 5-year/60,000-mile Powertrain Limited Warranty (the "Powertrain Warranty").  The Limited Warranties for the MY2016 Colorado and Canyon at issue in this matter are attached hereto as Exhibits 1 and 2, respectively.  *See Farm Bureau Gen. Ins. Co. of Mich. v. Blue Cross Blue Shield*, 655 F. App'x 483, 487 (6th Cir. 2016) (courts may review documents cited in "and central to the plaintiff's claim[s]" in considering a motion to dismiss).

part, pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to [GM's] network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, feedback, both directly and through its dealers, from its customers during repairs," and from online complaints through the NHTSA website and other web-based forums, (*id.* at PageID.629, ¶ 48; Exs. 2–3).

Plaintiffs do not allege that GM made affirmative misrepresentations about the Alleged Defect to them directly, but rather that GM failed to disclose it and actively omitted key information about the purported defect from consumers generally.  (Compl., ECF No. 26, PageID.628, ¶ 47, PageID.640-641, ¶ 64.)  Plaintiffs do not specify the facts that GM allegedly omitted, who at GM withheld these facts, or when or where GM made these purported omissions.

## III.    The Recall

GM previously recalled a small subset of MY2015 Colorados/Canyons that were manufactured between January 6, 2015 and March 17, 2015 (the "Recall") for a poor electrical connection within the steering gear connector caused by a faulty cover assembly (the "Recall Defect").  (*See* 2015 Recall Bulletin at 2 (attached hereto as Ex. 3).)  GM's repair for the Recall Defect involved replacing the cover assembly.  (*Id.*)

Not only do Plaintiffs assert that the Recall Defect (*i.e.*, pertaining to the cover assembly) and the Alleged Defect are essentially the same—they are not—but also that the

Recall Defect affects *all* the putative Class Vehicles, and that GM knew this when it manufactured those vehicles. (Compl., ECF No. 26, PageID.625-641, ¶¶ 40-64.) According to Plaintiffs, instead of recalling all putative Class Vehicles as it should have done, GM chose to "knowingly manufacture vehicles that contained an inherent defect but did not inform Plaintiff of the problem," and "vigorously refused to acknowledge that the electronic power steering torque assist sensor [is] the source of the defect" to avoid replacement costs under the Powertrain Warranty. (*Id.* at PageID.641, ¶ 64.)

## IV.   Customer Complaints

Plaintiffs' claims are premised on the notion that GM had prior knowledge of the Alleged Defect but failed to disclose it. Attempting to establish GM's knowledge, Plaintiffs offer what they characterize as "customer complaints" from online forums located at "www.coloradofans.com" and "www.carproblemzoo.com." (*Id.* at PageID.629-630, ¶¶ 49, 50.) Plaintiffs did not author any of these complaints. Nor do Plaintiffs identify the specific defect (*e.g.*, the Recall Defect, the Alleged Defect, or any others), if any, that these complaints supposedly relate to, or show that the complaints are in any way related to their vehicles. Indeed, all the complaints from "carproblemzoo.com," for example, relate to alleged "failure dates" in mid-to-late 2019.

Plaintiffs also attach to the Complaint more than two hundred pages of purported complaints from the NHTSA website. Plaintiffs did not author any of these complaints. Although Plaintiffs offer these complaints to show GM's supposed knowledge of the

Alleged Defect, they lack other key information that would make them relevant to Plaintiffs' claims (*e.g.*, indicating their mileage and age, whether the vehicles were part of the original recall or are still within the warranty period).  For example, Plaintiffs identify approximately 418 complaints that they say relate to the putative Class Vehicles.  Of these, less than 100 specify the mileage of the vehicle in question.  More importantly, of these 418 complaints, all but 22 were made from 2017 to 2020—*after* Plaintiffs had purchased their respective vehicles.   For context, GM sold or leased approximately 276,190 MY2015–16 Colorados/Canyons.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, plaintiffs' non-conclusory "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show ***entitlement*** to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original).  Although the Court must accept well-pleaded facts as true, the Court may not assume that "the [plaintiff] can prove facts that [he or she] has not alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Claims that sound in fraud, including fraudulent omission and statutory consumer protections claims premised on fraud allegations, must also meet the heightened pleading standard of Rule 9(b).  *See McMahon v. CitiMortgage, Inc.*, No. 10-14265, 2011 WL 2173916, at *3 (E.D. Mich. June 2, 2011) (fraudulent omission); *In re Ford Motor Co. Speed*

*Control Deactivation Switch Prod. Liab. Litig.*, MDL No. 1718, 2007 WL 2421480, at *9

(E.D. Mich. Aug. 24, 2007) (state consumer-protection claims).

## ARGUMENT

### I.    Counts I-V: Warranty Claims

#### A.    Plaintiffs Fail to State Express Warranty Claims (Count II).

Plaintiffs premise their express warranty claims on the Limited Warranty but do not

provide any basis for the Court to reasonably infer that GM breached that warranty.  GM

does not warrant or promise that its power steering system will meet certain performance

criteria or last for any specified period, only that it will repair or replace power steering

components that fail or malfunction pursuant to the terms of the Limited Warranty.  But the

Complaint does not allege that any Plaintiff ever presented his or her vehicle for repair during

the warranty period.  Courts routinely reject attempts like these to impose liability outside

the express warranty period and convert a limited express warranty into a lifetime one.

1.    *Plaintiffs Do Not Allege Sufficient Facts to Support a Breach of
the Limited Warranty.*

A manufacturer's liability for breach of an express warranty is governed—and

limited—by the terms of that warranty.  *Cipollone v. Liggett Grp. Inc.*, 505 U.S. 504, 525

(1992).  GM does not warrant that its vehicles are free of defects, only that it will "cover[]

repairs to correct any vehicle defect . . . due to materials or workmanship occurring during

the warranty period." (*See, e.g.*, Ex. 1 at 4; Ex. 2 at 4.)  For the power steering system, that

period is three years or 36,000 miles, whichever comes first.  (*Id.*) "To obtain warranty

9

repairs," the owner must "take the vehicle to a [GM] dealer facility within the warranty period and request the needed repairs." (*Id.*)

Here, no Plaintiff alleges that he or she experienced the Alleged Defect during the Bumper-to-Bumper Warranty period. Rather, each Plaintiff claims to have first experienced the Alleged Defect after driving his or her vehicle for more than 3 years, for more than 36,000 miles, or both. (Compl., ECF No. 26, PageID.641-668, ¶¶ 65-157.) Plaintiffs cannot credibly claim that GM breached the Limited Warranty if no Plaintiff ever experienced the Alleged Defect during the warranty period—let alone presented his or her vehicle to GM for repair during the warranty period—or that GM refused or failed to repair the vehicle during the warranty period.[2]

These indisputable facts mandate dismissal of Plaintiffs' express warranty claims.

2. *GM's Warranty Limits are Not Unconscionable.*

Plaintiffs cannot save their express warranty claims by claiming, in conclusory fashion, that the Limited Warranty's durational limits are unconscionable. (Compl., ECF No. 26, PageID.639-641, ¶¶ 59, 64.) A mere declaration that the warranty limitations are unconscionable without the support of any factual allegations is insufficient. *In re Sony Vaio Computer Notebook Litig.*, No. 09cv2109, 2010 WL 4262191, at \*3 (S.D. Cal. Oct. 28, 2010) (courts are not required to "accept as true a legal conclusion couched as a factual

---

[2]GM's Powertrain Warranty does not apply to steering components and is irrelevant to this case. (*See* Def.'s Mot. to Dismiss, ECF No. 13, PageID.175 (citing exhibits).)

allegation") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In fact, multiple courts have held that GM's Limited Warranty is conscionable and enforceable.  *See In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 630 (E.D. Mich. 2019) (finding GM's limited warranty was neither procedurally nor substantively unconscionable).  More generally, vehicle warranties are universally limited in duration for common-sense reasons: manufacturers cannot be expected to guarantee their products indefinitely.  *See, e.g., Smith v. LG Elecs. U.S.A., Inc.*, No. C 13–4361, 2014 WL 989742, at *6 (N.D. Cal. Mar. 11, 2014).  Plaintiffs' unconscionability averments fail.

### 3.  *Certain Plaintiffs Never Sought or Received Repairs from a GM-Authorized Dealership and Cannot Plead Viable Warranty Claims.*

Plaintiffs Barnes, Cirignano, Keller, Kobel, and Ostrander do not allege that they presented their vehicles to an independent GM dealer and requested the needed repairs. (Compl., ECF No. 26, PageID.644-663, ¶¶ 73, 88, 106, 113, 134.)  Under GM's Limited Warranty, to obtain warranty repairs, the owner must "take the vehicle to a [GM] dealer facility within the warranty period and request the needed repairs."  (Ex. 1 at 4; Ex. 2 at 4.) Courts routinely dismiss claims for breach of limited warranties where plaintiffs do not allege that they sought repairs "within the durational limits specified in their respective [] warranties[.]" *See In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 877 (E.D. Mich. 2009); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 WL 9259455, at *4 (N.D. Ill. Dec. 18, 2015).  This Court

11

should do the same.[3]

**B.   Plaintiffs Fail to State Implied Warranty Claims (Count III).**

*1.      Any Implied Warranty is Limited to the Terms of GM's
         Express Limited Warranty.*

Plaintiffs' claims for breach of implied warranty are precluded by GM's Limited

Warranty, which expressly limits "any implied warranty of merchantability or fitness for a

particular purpose . . . to the duration of this [Limited Warranty]." (*See, e.g.*, Ex. 1 at 13; Ex.

2 at 13.)

Implied warranties may properly be limited "to the duration of a written warranty of

reasonable duration, if such limitation is conscionable and is set forth in clear and

unmistakable language and prominently displayed on the face of the warranty." *Chaudoin*

*v. Thor Motor Coach, Inc.*, No. 15-13871, 2017 WL 3485803, at *9 (E.D. Mich. Aug. 15,

2017); *see also Miller v. Gen. Motors, LLC*, No. 17-CV-14032, 2018 WL 2740240, at *9

(E.D. Mich. June 7, 2018) (dismissing implied warranty claim where "GM validly shortened

the limitations period of any implied warranties to the duration of the Limited Warranty").

Because Plaintiffs' vehicles were outside the written warranty periods when the Alleged

Defect manifested, any implied warranties had likewise expired. (*See* Compl., ECF No. 26,

PageID.641-668, ¶¶ 65-157; Ex. 1 at 4; Ex. 2 at 4.)  And again, multiple courts have held

that GM's Limited Warranty is conscionable and enforceable. *See In re Gen. Motors Air*

---

[3] This failure also mandates dismissal of these Plaintiffs' implied warranty claims.
*See In re OnStar Contract Litig.*, 600 F. Supp. at 877.

*Conditioning*, 406 F. Supp. 3d at 630; *Dawson v. Gen. Motors LLC*, No. CV 19-8680, 2019 WL 3283046, at *7 (D.N.J. July 22, 2019) (dismissing plaintiff's breach of implied warranty claim against GM where warranty did not extend "beyond the time or mileage limitation provided by [the] express warranty"). Plaintiffs' implied warranty claims have no legal merit and should be dismissed.

2. *Plaintiffs' Vehicles Were Merchantable At the Time of Sale.*

Even if Plaintiffs' implied warranty claims could extend past the Limited Warranty period (and they cannot), those claims would nevertheless fail as a matter of law because Plaintiffs fail to allege that their vehicles were unmerchantable at the time of sale. Rather, Plaintiffs erroneously assume that the implied warranty of merchantability is breached whenever a product might have a "latent" defect that may later manifest. But that assumption is contrary to the purpose and function of the warranty and to settled law.

To state an implied warranty claim, a plaintiff must plead that the product manifests a defect that existed when the plaintiff took control of the product. *See Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 302 (6th Cir. 2015) (plaintiff must show that the defect "existed at the time the product left the manufacturer or entity in the line of distribution being sued"). It does not guarantee that the product will fulfill the buyer's every expectation but instead assures a minimal level of quality. *See Rosenbaum v. Toyota Motor Sales, USA, Inc.*, No. 16-CV-12645, 2016 WL 9775018, at *2 (E.D. Mich. Oct. 21, 2016) ("Merchantable is not a synonym for perfect. The warranty of merchantability is that goods

13

are of average quality in the industry" and fit for their "ordinary purpose"); *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009).  Cars are designed to provide transportation, so "where a car can provide safe, reliable transportation, it is generally considered merchantable."  *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012).  The text of the UCC applicable in each relevant state requires that the goods be "fit for the ordinary purposes for which such goods are used."  *See, e.g.*, Cal. Com. Code § 2314(2)(c).

The requirement that the goods be fit for their ordinary purpose is directed to the *functionality* of the products.  Where vehicles—like Plaintiffs'—have been in operation for several years and tens of thousands of miles before any issues occur, the vehicles are fit for their intended purposes.  *Chiarelli v. Nissan N. Am., Inc.*, No. 14-cv-4327, 2015 WL 5686507, at *8 (E.D.N.Y. Sept. 25, 2015); *Oddo v. Arcoaire Air Conditioning & Heating*, No. 8:15-cv-01985, 2017 WL 372975, at *15-16 (C.D. Cal. Jan. 24, 2017) (warranty compliance is established as a matter of law if the product has performed satisfactorily for an extended period); *Sheris v. Nissan N. Am., Inc.*, No. 07–2516, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) (vehicle was merchantable where it had been driven more than 20,000 miles without incident); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, No. 96–3125, 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997) (dismissing claims for breach of the implied warranty of merchantability where plaintiffs drove their vehicles for years before experiencing the ignition switch issue); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d

14

614, 624 (M.D.N.C. 2006) (where an automobile generally provides safe, reliable transportation over many years and thousands of miles, it is considered merchantable).

Plaintiffs claim that the Alleged Defect arose only after they had driven their respective vehicles for more than three years, more than 36,000 miles, or both. (*See* Compl., ECF No. 26, PageID.641-668, ¶¶ 65-157.)[4]   Plaintiffs have therefore failed to plausibly allege that their vehicles were unmerchantable upon leaving GM's control.   For this additional reason, Plaintiffs' implied warranty claims should be dismissed.

Plaintiffs also maintain that they have driven, ***and still drive***, their vehicles, even after allegedly experiencing the alleged power steering defect. (*Id.*)   In fact, several Plaintiffs have not even taken their vehicles to a GM-authorized dealership or sought to have their vehicles repaired. (*Id.* at PageID.644-663, ¶¶ 73, 88, 106, 113, 134.)   Indeed, that Plaintiffs continue to drive their vehicles precludes any claim that their vehicles are unfit for the "ordinary purpose" of driving. *E.g., Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.,* 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (dismissing implied warranty claim related to defective pre-collision braking feature because "Plaintiffs have not alleged that they stopped using their vehicles" or that the defect caused them to experience a crash); *Weidman v. Ford Motor Co.,* No. 18-cv-12719, 2019 WL 3003693, at *4-5 (E.D. Mich. July 10, 2019) (dismissing

---

[4] Plaintiff Ambrose experienced the Alleged Defect around four years after purchase, Plaintiff Barnes experienced the Alleged Defect at about 40,000 miles, Plaintiff Faussett experienced the Alleged Defect at about 55,000 miles, and Plaintiff Keller experienced the Alleged Defect at about 65,000 miles. (*See* Compl., ECF No. 26, PageID.641-668, ¶¶ 65-157.)

implied warranty claims where plaintiffs were able to use their vehicles); *Chiarelli*, 2015 WL 5686507, at *8 (dismissing implied warranty claims in Florida and other states); *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013) (affirming district court's dismissal of implied warranty claims because plaintiffs "failed to allege that their [vehicle] was unfit for its intended purpose").

And, although the Complaint contains vague allegations that Plaintiffs' vehicles were "not fit for their intended purpose," (Compl., ECF No. 26, PageID.628, ¶ 47), this is a legal conclusion couched as a factual allegation that the Court need not accept as true. *See Greenbroz, Inc. v. Laeger Built, LLC*, No. 16-cv-02946, 2017 WL 3622308, at *1 (S.D. Cal. Aug. 22, 2017) ("[T]he Court is not bound to accept as true a legal conclusion couched as a factual allegation [or] allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and quotations omitted).

### C.   Plaintiffs' Warranty Claims Must be Dismissed For Lack of Notice.

In addition to the above reasons, Plaintiffs' express and implied warranty claims are also ripe for dismissal due to Plaintiffs' failure to comply with the pre-suit notice requirements in the relevant jurisdictions.  Indeed, all states at issue, save Indiana, require consumers to provide a seller of goods with notice and an opportunity to cure before bringing an action for breach of warranty.  *See generally* 15 U.S.C. § 2310(e); U.C.C. § 2-607(3)(a).[5]

---

[5] *See* Cal. Com. Code § 2607(3)(A); Fla. Stat. § 672.607(3)(a); 810 Ill. Comp. Stat. 5/2-607(3)(a); N.J. Stat. § 12A:2-607(3)(a); N.Y. U.C.C. Law § 2-607(3)(a); N.C. Gen. Stat. § 25-2-607(3)(a); S.C. Code § 36-2-607(3)(a); S.D. Codified Laws § 57A-2-607(3)(a);

The Complaint contains virtually no allegations that Plaintiffs provided GM with notice and an opportunity to cure. To the extent Plaintiffs claim that complaints posted through NHTSA and third-party websites somehow gave GM such notice and opportunity, that claim fails. Very simply, none of these "complaints" were made by Plaintiffs, involve any Plaintiff's vehicle, or can even be assumed to relate to the Alleged Defect. Nor have Plaintiffs offered any reason why these irrelevant complaints by third-parties suffice to satisfy Plaintiffs' obligations under state law by themselves to provide GM with notice and a reasonable opportunity to cure.

While a single Plaintiff (Woronko) allegedly complained to a GM dealership and sent a letter to GM on November 12, 2019, (Compl., ECF No. 26, PageID.680-681, ¶ 195), these claims cannot be imputed to all other Plaintiffs, nor do Plaintiffs even attempt to do so. And even if that were the case, simply taking a vehicle to an independently-owned dealership for repair does not suffice as notice to GM of a breach of warranty. *Gorman v. Am. Honda Motor Co., Inc.*, 839 N.W.2d 223, 232 (Mich. Ct. App. 2013) (a vehicle's repair history did not give defendants notice of breach, but instead showed that defendants honored the warranty, as "repairs were made, and the vehicle was returned to service without

---

Wash. Rev. Code § 62A.2-607(3)(a); *see also Travelers Prop. & Cas. Ins. Corp. v. Yankee Gas Servs. Co.*, 2000 WL 775558, at *3 (Conn. Super. Ct. May 19, 2000) (striking claim for breach of implied warranty of merchantability because complaint failed to allege plaintiff gave defendant notice of the defective product); *Rosipko v. FCA US, LLC*, No. 15-11030, 2015 WL 8007649, at *5 (E.D. Mich. Dec. 7, 2015) ("Michigan law requires notice before bringing suit [for breach of warranty] or the action is barred.").

objection."). Nor can a letter sent to GM a week before filing the original Complaint suffice to give GM a reasonable opportunity to cure. *See Johnston v. PhD Fitness, LLC*, No. 16-cv-14152, 2018 WL 646683, at *3 (E.D. Mich. Jan. 31, 2018) (adequate pre-suit notice by letter must be received sufficiently in advance of complaint to allow for investigation of claims and pursuit of settlement).[6]

Pre-suit notice is not merely a formality. It allows time for the parties to negotiate and propose settlements, including potential cure, without litigation. "And if litigation is inevitable, it gives the defendant a chance to investigate the factual basis for any claims against it, including allegations involving long-ago sales." *Id.* Despite Plaintiffs' home states each requiring pre-suit notice, Plaintiffs fail to allege any facts in that regard. Accordingly, the Court can and should dismiss all of Plaintiffs' warranty claims.

### D.    Plaintiffs' Warranty Claims are Barred by the Applicable Statute of Limitations in Eleven of Twelve States at Issue.

Under the UCC, a breach of warranty claim accrues upon delivery of the goods, "regardless of the aggrieved party's lack of knowledge of the breach." U.C.C. § 2-725(1), (2). The vast majority of states—including 10 of the 12 states at issue here—have adopted Section 2-725 of the UCC and apply it to the sale of vehicles (Florida and South Carolina are the exceptions). All ten of these states have adopted the UCC's date-of-delivery accrual

---

[6] The letter also has obvious reliability issues (*e.g.*, the letter is noted as "Certified Mail," but Plaintiff Woronko does not attach any return receipt that would provide crucial details like when the letter was actually sent or received). (*See* Ex. 22 to Compl., ECF No. 26-23, PageID.1331-1334.)

rule,[7] along with a four-year statute of limitations for such claims.[8]  All but one Plaintiff from states with a four-year limitations period purchased their vehicles more than four years before October 23, 2020, the date of the Amended Class Action Complaint.  (Compl., ECF No. 26, PageID.641-668, ¶¶ 65-157.)  And, while Florida's limitations period is 5 years, the sole Plaintiff from that state (Barnes) is still untimely, as he purchased his vehicle in August 2015.  (*Id.* at PageID.643, ¶ 70.)  Therefore, except as to Plaintiff Cirignano (SC), the limitations period has expired for all Plaintiffs' warranty claims. [9]

Therefore, in accordance with the relevant state law limitations periods, the Court should dismiss all Plaintiffs' warranty claims that were not brought within the applicable limitations period.[10]

---

[7] Cal. Com. Code § 2725(2); Conn. Gen. Stat. § 42a-2-725(2); 810 Ill. Comp. Stat. 5/2-725(2); Ind. Code § 26-1-2-725(2); Mich. Comp. Laws § 440.2725(2); N.J. Stat. § 12A:2-725(2); N.Y. U.C.C. Law § 2-725(2); N.C. Gen. Stat. § 25-2-725(2); S.D. Codified Laws § 57A-2-725(2); Wash. Rev. Code § 62A.2-725(2).

[8] *See* Cal. Com. Code § 2725(1); Conn. Gen. Stat. § 42a-2-725(1); 810 Ill. Comp. Stat. 5/2-725(1); Ind. Code § 26-1-2-725(1); Mich. Comp. Laws § 440.2725(1); N.J. Stat. § 12A:2-725(1); N.Y. U.C.C. Law § 2-725(1); N.C. Gen. Stat. § 25-2-725(1); S.D. Codified Laws § 57A-2-725(1)-(2); Wash. Rev. Code § 62A.2-725(1). Florida has a five-year statute of limitations for express warranty and a four-year statute for implied warranty.  Fla. Stat. §§ 95.11(2)(b), (3)(k).  South Carolina has a six-year statute of limitations periods. S.C. Code § 36-2-725(1).

[9] The California Plaintiffs additionally brought warranty claims based on California's Song-Beverly Consumer Warranty Act under separate Counts.  These claims should be dismissed for the same reasons, as discussed below in Section I.F.

[10] In sum, the statutes of limitation clearly bar warranty claims by 14 of 15 Plaintiffs: Ambrose (NJ), Barnes (FL), Chapman (WA), Faussett (CA), Grujic (IL), Keller (NC

### E.   Nine Plaintiffs' Warranty Claims Must be Dismissed for Lack of Privity.

In many states, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity.  Here, seven of the states in question require privity: California, Florida, Connecticut, North Carolina, New York, Illinois, and Washington.  *See, e.g., In re Seagate Tech., LLC*, 233 F. Supp. 3d 776, 788 (N.D. Cal. 2017) (dismissing California implied warranty claims for lack of privity with manufacturer); *Kahn v. Volkswagen of Am., Inc.*, No. FSTCV075004090S, 2008 WL 590469, at *8 (Conn. Sup. Ct. Feb. 13, 2008) (Connecticut law "maintain[s] a privity requirement that prevents parties who are not in contractual privity with the warrantor from enforcing any implied warranty"); *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325 (Fla. Ct. App. 2008); *Sharrard, McGee & Co., P.A. v. Suz's Software, Inc.*, 396 S.E.2d 815, 818 (N.C. Ct. App. 1990) ("[O]utside the exceptions created by G.S. Chapter 99B, the general rule is that privity is required to assert a claim for breach of an implied warranty involving only economic loss."); *Mellander v. Kileen*, 407 N.E.2d 1137, 1138 (Ill. Ct. App. 1980); *Martin v. Julius Dierck Equip. Co.*, 374 N.E.2d 97, 100 (N.Y. 1978); *Tex Enters., Inc. v. Brockway Standard, Inc.*, 66 P.3d 625, 628 (Wash. 2003).

Plaintiffs each allege that they purchased their vehicles from an independent, GM-authorized dealership. (Compl., ECF No. 26, PageID.641-668, ¶¶ 65-157.) But independent

---

(purchased)), Kobel (NY), Lawson (IN), Lutsk (CA), Magallanes (CA), Meir (CT), Ostrander (NC), Overturf (SD), and Woronko (MI).

dealers are not agents of GM for the purpose of establishing privity. *Williams v. Yamaha Motor Corp.*, No. 13-05066, 2015 WL 13626022, at *6 (C.D. Cal. Jan. 7, 2015) ("[T]he relationship between automobile manufacturers and their dealers has been examined by a host of courts throughout the country, all of which have agreed that dealers are not 'agents' of manufacturers.").

Accordingly, the Court should dismiss the implied warranty claims as to Plaintiffs Barnes (FL), Chapman (WA), Faussett (CA), Grujic (IL), Kobel (NY), Lutsk (CA), Magallanes (CA), Meir (CT), and Ostrander (NC), based on their lack of privity with GM.

### F. The California Plaintiffs' Song-Beverly Claims Fail.

In Counts IV and V, Plaintiffs Faussett, Lutsk, Magallanes, and Ostrander seek to assert additional express and implied warranty claims under California's Song-Beverly Consumer Warranty Act. The Song-Beverly Act applies only to new vehicle purchases. *Paydar v. Jaguar Land Rover N. Am., LLC*, No. 19-CV-0058-BAS-WVG, 2019 WL 3253068, at *3 (S.D. Cal. July 19, 2019) (citing Cal. Civ. Code § 1793.22(e)(2)). Faussett is the only California Plaintiff who alleges that he purchased a ***new*** vehicle. Therefore, Lutsk, Magallanes, and Ostrander fail to state a claim for relief under the Song-Beverly Act.

Nevertheless, all four California Plaintiffs' claims fail for the additional reason that they are barred by the statute of limitations. The applicable limitations period under California law is four years, which runs from the date of purchase for warranty claims under the California Commercial Code. *See* Cal. Com. Code § 2725(1). This limitations period

21

also applies to claims brought under Song-Beverly. *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 291-92 (Cal. Ct. App. 2009) (stating that Song-Beverly borrows the limitations period for warranties arising under the California Uniform Commercial Code). Here, Plaintiffs Faussett, Lutsk, Magallanes, and Ostrander were not added to this suit until October 23, 2020. (*See* Compl., ECF No. 26, PageID.615.) But they purchased their vehicles in September 2016, November 2014, August 2016, and February 2016, respectively. As a result, all four of these Plaintiffs have brought their Song-Beverly (and other claims) outside the limitations period. The Court should therefore dismiss these claims. *See Ferris v. Ford Motor Co.*, No. 18-cv-03216, 2019 WL 1100376, at *2 (N.D. Cal. Mar. 8, 2019) (dismissing untimely implied warranty claims).

### G. No Plaintiffs State a Claim under MMWA.

An MMWA claim depends on a sustainable claim for breach of warranty under state law. *Zanger v. Gulf Stream Coach, Inc.*, No. 05-72300, 2006 WL 1494952, at *7 (E.D. Mich. May 25, 2006) ("[I]f there exists no actionable [state law] warranty claim, there can be no violation of the Magnuson-Moss Act."); *see also Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005). As discussed in the preceding Sections, Plaintiffs have failed to plead any viable breach of warranty claim under state law. Accordingly, their MMWA claim fails.

## II.   Counts VI-XVIII: Fraud-Based Claims

Counts VI-XVIII assert common-law claims for unjust enrichment and fraudulent

concealment, as well as violations of various consumer-fraud statutes in the relevant states. These claims should be dismissed for the numerous reasons outlined below.

### A. Plaintiffs' Fraud-Based Claims Fail Under Rule 9(b).

#### 1. Rule 9(b) Applies to Counts VI-XVIII.

All Plaintiffs' non-warranty claims (comprising Counts VI-XVIII) sound in fraud, including not only their "nationwide" fraudulent concealment claim in Count VI, (Compl., ECF No. 26, PageID.687-689), but also their "nationwide" claim for unjust enrichment in Count VII (*id.* at PageID.689-690), and their state statutory claims in Counts VIII through XVIII (*see id.* at PageID.690-733 (depicting GM as intentionally misrepresenting, concealing, and/or failing to disclose material facts, defrauding Plaintiffs, etc.)). Rule 9(b) applies to all these claims. *See, e.g., Miller v. Gen. Motors, LLC*, No. 17-CV-14032, 2018 WL 2740240, at *12 (E.D. Mich. June 7, 2018) (common law fraud claims must satisfy Rule 9(b)); *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834, 2018 WL 288085, at *8, *10 (N.D. Cal. Jan. 4, 2018) (same as to unjust enrichment claims sounding in fraud); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (same as to state statutory claims). Because Plaintiffs' consumer protection claims sound in fraud, they must meet Rule 9(b)'s heightened pleading standard.

#### 2. Plaintiffs Do Not Plead Counts VI-XVIII with Particularity.

Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For fraud-based claims, this means plaintiffs must

lay out "the who, what, when, where, and how of the misconduct charged." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012); *Kearns*, 567 F.3d at 1124. The rule applies to affirmative misrepresentations and fraudulent omissions alike. *William Beaumont Hosp. Sys. v. Morgan Stanley & Co.*, LLC, 677 F. App'x 979, 983 (6th Cir. 2017).

Although Plaintiffs pursue class-wide relief, no class has been certified, so the question is whether the 15 named Plaintiffs have alleged the "who, what, when, where, and how" of the fraud that allegedly tainted their individual purchases. *See Republic Bank*, 683 F.3d at 256 (analyzing whether class representative alleged fraud with particularity as to his individual claims). But far from alleging who misled them, with what materials, and when, where, and how the deception occurred, Plaintiffs offer only empty assertions. Repeating the same allegations time and again, each Plaintiff alleges that he or she "relied on GM's representations about the functionality and features of the vehicle" and would not have otherwise purchased (or would have paid less for) the vehicle had they known of the Alleged Defect. (Compl., ECF No. 26, PageID.641-668, ¶¶ 65-157.) Plaintiffs do not identify any specific and material facts that GM concealed or omitted from them, when or where GM allegedly concealed or omitted those facts and by whom, how Plaintiffs were misled, or why the omissions were fraudulent. *See Williams v. Scottrade, Inc.*, No. 06-10677, 2006 WL 2077588, at *7 (E.D. Mich. July 24, 2006) (allegations of "generally" misrepresenting in "advertisements, marketing materials, and sales message[s]" were insufficient); *In re Ford*

24

*Motor Co. Speed Control Prods. Liab. Litig.*, 2007 WL 2421480, at *9 (plaintiff "do[es] not allege where or when Ford made the alleged misrepresentations").

Plaintiffs also make the blanket claim that GM's notice of the Alleged Defect "derived from" GM's own knowledge, including "pre-production testing, preproduction design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendant's network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers[.]" (Compl., ECF No. 26, PageID.629, ¶ 48.)  Notably, Plaintiffs' counsel offered this same allegation, word-for-word, in another case in this District, *Hall v. Gen. Motors, LLC*, No. 19-CV-10186, 2020 WL 1285636, at *3 (E.D. Mich. Mar. 18, 2020).  There, the Court found these allegations "too vague and pleaded at too high a level of generality to support a reasonable inference that GM had pre-sale knowledge[.]"  *Id.*  As in this case, the *Hall* plaintiffs had "not alleged any facts about GM's pre-production testing, any particular analysis GM completed based on that testing, or GM's repair order and parts data that, if proven, would establish GM's pre-sale knowledge[.]"  *Id.*

Instead, Plaintiffs merely state, in conclusory fashion, that (1) at unspecified times GM intentionally concealed material facts "including the standard, quality or grade of the [Class] Vehicles and the presence of the electronic power steering torque assist defect," and (2) Plaintiffs purportedly "relied upon GM's knowing concealment and omissions." (Compl., ECF No. 26, PageID.687-689, ¶¶ 227, 232.)  Plaintiffs' vague allegations fall well

25

short of the Rule 9(b) requirements. *Feliciano v. Gen. Motors LLC*, No. 14 Civ. 06374 (AT), 2016 WL 9344120, at *14 (S.D.N.Y. Mar. 31, 2016) ("Plaintiffs . . . do not claim that any Plaintiff viewed the advertisements."). This is not "particularity"—it is copy-and-pasted boilerplate—and it is fatally deficient pleading.

Moreover, each named Plaintiff—individually—must allege with particularity what they saw and heard, when they saw and heard it, what statements they relied on, what statements they found material, and who was responsible for the statements they now claim tricked them into buying their vehicles. *See Kearns*, 567 F.3d at 1126 (upholding dismissal for failure to specify these items as to named plaintiff in case alleging that a putative class overpaid for various vehicles). Again, the Complaint provides no details about any information that any named Plaintiff reviewed before buying a vehicle, let alone what misrepresentations or omissions each specific Plaintiff actually read or saw. Under Rule 9(b), this requires dismissal of all Plaintiffs' claims sounding in fraud.

Nor can Plaintiffs save their claims by asserting that they are alleging fraudulent omissions, not just affirmative misrepresentations. Rule 9(b) applies to "omissions" allegations too, and it requires Plaintiffs to allege not only what information was omitted, but also "where the omitted information should or could have been revealed" and "representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Eisen v. Porsche Cars N. Am.*, 2012 WL 841019, at *3 (C.D. Cal. 2012); *Hall*, 2020 WL 1285636, at *2 (holding,

26

in fraudulent omissions context, that a plaintiff must adequately allege a manufacturer's

knowledge of the defect before sale).  Plaintiffs simply never answer a basic question: What

"advertisements, offers, or other representations" did each individual named Plaintiff rely on

to make their purchases, such that they would have been aware of a disclosure had one been

made? *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. MDL-1703,

Nos. 05 4742, 05 C 2623, 2009 WL 937256, at *6 (N.D. Ill. Apr. 6, 2009) ("[P]laintiffs have

the burden of alleging specifically which commercials they saw and the content of those

commercials.").

Because Plaintiffs have not answered that and other questions necessary to satisfy

Rule 9(b), all their fraud-based claims should be dismissed.

### B.  Plaintiffs Fail to State a Claim for Fraudulent Concealment.

In addition to the pleading requirements under Rule 9(b), Plaintiffs' fraudulent

concealment Count requires them to allege that GM was aware of the Alleged Defect at the

time of sale, and that GM had a duty to disclose that knowledge. *See Matanky v. Gen. Motors

LLC*, 370 F. Supp. 3d 772, 790 (E.D. Mich. 2019) (citing *Bryde v. Gen. Motors, LLC*, No.

16-CV-02421-WHO, 2016 WL 6804584, at *9 (N.D. Cal. Nov. 17, 2016)); *Sneyd v. Int'l

Paper Co.*, 142 F. Supp. 2d 819, 823 (E.D. Mich. 2001).

1. *Plaintiffs Cannot Show that GM had Knowledge of the Alleged Defect at the Time of Sale.*

A party cannot have an obligation to disclose facts that it did not know, and a party is only obligated to disclose known facts that would be material to the plaintiff's purchase decision. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012).

Plaintiffs do not allege with the requisite specificity any material fact that GM knew about their specific vehicles but failed to disclose before their purchases. To do so, a plaintiff must "describe the content of the [alleged] omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Eisen*, 2012 WL 841019, at *3 (citation omitted); *see also Kearns*, 567 F.3d at 1126–27; *Wilson*, 668 F.3d at 1145–47 (holding that several customer complaints and a separate lawsuit about the same problem with a different product model were insufficient to show knowledge of an alleged defect).

Plaintiffs contend that a statistically insignificant number of complaints submitted to NHTSA and a handful of postings on third-party websites establish that GM knew of the Alleged Defect in their vehicles. (Compl., ECF No. 26, PageID.629-638, ¶¶ 49-54.) But courts routinely reject reliance on such information to show a defendant's pre-sale knowledge. *See, e.g., Wozniak v. Ford Motor Co.*, No. 2:17-cv-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019) (allegations of "negative reviews on third-party forum websites and [NHTSA] complaints" are insufficient to show knowledge); *Hall*, 2020 WL

28

1285636, at *4 (same); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) ("[C]ustomer complaints in and of themselves [do not] adequately support an inference that a manufacturer was aware of a defect[.]"); *Oliver v. Funai Corp.*, No. 14-cv-04532, 2015 WL 9304541, *4 (D.N.J. Dec. 21, 2015) ("imputing knowledge" based on "internet posting[s] would mean that virtually every consumer product company would be subject to fraud claims and extensive discovery" where any plaintiff can show that the company's "product broke once and that someone had complained about it on the internet"). This is especially true where plaintiffs cannot show that the defendant monitored the websites, much less saw the posts in question. *See Resnick v. Hyundai Motor Am., Inc.*, No. 16-cv-00593, 2016 WL 9455016, at *13 (C.D. Cal. Nov. 14, 2016) ("Plaintiffs have not presented any facts indicating that Hyundai monitored these websites or was aware of these complaints"); *Oliver*, 2015 WL 9304541, at *3 (consumer reviews insufficient to show pre-sale knowledge where plaintiffs failed to allege defendant monitored website).

Courts have found that even large numbers of complaints posted on a manufacturer's *own* website are insufficient to establish knowledge because they only show "that some consumers were complaining." *Berenblat v. Apple, Inc.*, Nos. 08-4969, 09-1649, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) (hundreds of customer complaints posted on defendant's website "at most" established knowledge of a *problem*, not of a *defect*); *Sloan v. Gen. Motors LLC*, No. 16-cv-07244, 2017 WL 3283998, at *7 (N.D. Cal., Aug. 1, 2017) (finding 81 complaints over seven years not enough to show GM's knowledge of the defect).

In their Complaint, Plaintiffs claim that the NHTSA complaints show that GM had knowledge of the Alleged Defect affecting their MY2015-2016 Colorados/Canyons at the time of sale.  (Compl., ECF No. 26, PageID.630-632, ¶¶ 51-54.)  But Plaintiffs do not allege even a single fact to suggest that, given the "[hundreds of] thousands" of Colorados/Canyons sold in the U.S.[11], (*id.* at PageID.616, ¶ 2), the NHTSA complaints constitute the "unusually high" number of complaints needed to establish notice of a defect.  *See Williams*, 851 F.3d at 1026.

To be sure, Plaintiffs do not allege that GM monitored these websites or that it even saw any of the posts in the Complaint.  *See Wozniak*, 2019 WL 108845, at *3 ("Plaintiffs' general assertions of Defendant's knowledge without any alleged facts that Defendant was even aware of the complaints do not rise above mere speculation.").  And to the extent that these complaints were submitted to NHTSA or posted ***after*** Plaintiffs purchased their vehicles, or failed to address the ***specific defect*** at issue, they cannot show knowledge of the Alleged Defect in Plaintiffs' vehicles at the time of purchase.  *Hall*, 2020 WL 1285636, at *4 (NHTSA complaints insufficient to show knowledge because they were "vague and/or include[d] complaints about issues that [were] not included in the list of 'symptoms'" of defect, and plaintiffs failed to specify (1) which complaints related to the class vehicles at issue and/or (2) arose out of the defect in questions rather than some other potential defect); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 412 (S.D.N.Y. 2017),

---

[11] GM in fact sold 276,190 MY2015–16 Colorados/Canyons.

*modified on reconsideration by*, Nos. 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017).

Plaintiffs' allegations based on postings to the websites "coloradofans.com" and "carproblemzoo.com" are equally deficient in showing GM's knowledge of a defect at the time of sale. Neither website has any affiliation with GM, nor do Plaintiffs allege that GM monitored the websites or saw the posts. Of the complaints on "coloradofans.com," none identify a MY15-16 Colorado/Canyon, nor show that they were made before Plaintiffs purchased their vehicles. (Ex. 15 to Compl., ECF No. 26-16, PageID.1068-1081.) Likewise, each complaint from "carproblemzoo.com" was posted in *2020—years* after Plaintiffs purchased their vehicles. (Ex. 16 to Compl., ECF No. 26-17, PageID.1082-1091.) It goes without saying that there is no way that these complaints could have put GM on notice of the Alleged Defect at the time Plaintiffs purchased their vehicles *in 2014 to 2016*. Of the several hundred "customer complaints" that Plaintiff cites, only 26 were posted in 2015 and 2016. The majority of these occurred after all the Plaintiffs had already purchased their vehicles and thus could not have been known to GM at the time of Plaintiffs' respective purchases. (*See e.g.*, ECF No. 26-16, PageID.1068-1081; ECF No. 26-17, PageID.1082-1091; ECF No. 26-20, PageID1104-1317.)

Plaintiffs also make conclusory allegations that GM knew of this issue through its "own knowledge about the material, design, and manufacture of the part," but plead no facts in support of this conclusion. (Compl., ECF No. 26, PageID.629, ¶ 48.) These vague

31

allegations are insufficient to show GM's knowledge. *See Mandani v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287, 2019 WL 652867, at \*7–8 (N.D. Cal. Feb. 15, 2019) ("[C]onclusory allegations of pre-purchase knowledge based on 'pre-sale design and testing' are insufficient."); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 753 (E.D. Mich. 2017) (collecting cases rejecting generic allegations of testing and analysis).

Finally, to the extent Plaintiffs argue that the Recall itself demonstrates GM's knowledge of their vehicle's Alleged Defect at the time of sale, this argument fails. That GM recalled a small number of MY2015 Colorados/Canyons for the Recall Defect in no way establishes that the Recall Defect affects MY2016 Colorados/Canyons. Quite the contrary, these vehicles were excluded from the NHTSA-supervised recall because they were not affected by the Recall Defect. Other than their own bare, self-serving assertions, Plaintiffs' 120-page Complaint contains not a single allegation that links the Recall or the Recall Defect to the Class Vehicles.

### 2. *Plaintiffs Do Not Allege That GM Had A Duty To Disclose.*

Plaintiffs also do not sufficiently allege that GM had a duty to disclose—a required element of fraudulent concealment claims. *See Sneyd v. Int'l Paper Co.*, 142 F. Supp. 2d 819, 823 (E.D. Mich. 2001).

Plaintiffs here claim that GM owed a duty to disclose based on its "superior and exclusive knowledge" of the Alleged Defect. (Compl., ECF No. 26, PageID.687-88, ¶ 227.) But this is belied by Plaintiffs' many allegations of public information about the Alleged

Defect, such as the complaints to NHTSA and on third-party websites.  (*Id.* at PageID.629-638, ¶¶ 49-54.)  Although Plaintiffs declare that GM "actively concealed" the existence and nature of the Alleged Defect, they fail to identify anyone at GM that purportedly was aware of any concealed facts, the source of that knowledge, or any actions GM took to conceal the facts.[12]  (*See, e.g.*, *id.* at PageID.618, ¶ 11, PageID.714, ¶ 330.)  These omissions are fatal to Plaintiffs' claim.  The Court "will not consider [p]laintiffs' legal conclusion of duty to be true without any factual allegations to support such a conclusion."  *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, MDL Docket No. 1718, 2007 WL 2421480, at *8; *see also Kampuries v. Am. Honda Motor Co.*, 204 F. Supp. 3d 484, 493 (E.D.N.Y. 2016) (plaintiff's conclusory assertion that defendants knew about alleged defect but "concealed from" or "failed to notify" plaintiff and the public was "flimsy," "unfounded," and therefore, insufficient to make out a claim for fraudulent concealment).

### 3.   Nine Plaintiffs' Fraudulent Concealment Claims are Time-barred.

Plaintiffs' Nationwide Count 6 alleges common-law fraudulent concealment on behalf of a nationwide class, or, in the alternative, "on behalf of their respective state subclasses." (Compl., ECF No. 26, PageID.687, ¶ 224.)  As discussed above in Section II.A, these claims fail, in part because Plaintiffs must indicate which state's (or states') laws

---

[12] Plaintiffs' story conflicts with reality.  Far from "actively concealing," GM conducted the NHTSA-supervised Recall of MY2015 vehicles that GM identified as potentially defective.  GM publicized the Recall in a 2015 bulletin—which Plaintiffs cited in the Complaint—made available to the public on NHTSA's website. *See* https://static.nhtsa.gov/odi/rcl/2016/RCSB-16V054-5551.pdf

support their fraud claim and so the nationwide claim must fail. *See SRAM Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008). Moreover, many of the common-law fraud claims should be dismissed for the additional reason that they are barred by the relevant limitations periods. Except for Illinois, Indiana, Michigan, New York, New Jersey, and South Dakota, the remaining states at issue have limitations periods that are 4 years or less.[13] Accordingly, the common-law fraud claims under the laws of California, Connecticut, Florida, South Carolina, and Washington are barred by the relevant statute of limitations.[14]

### 4. *Multiple Plaintiffs' Fraudulent Concealment Claims are Barred by the Economic Loss Rule.*

The economic loss rule—which generally states that a plaintiff may not recover damages in tort that do not involve physical injury—bars damages for affirmative misrepresentations in Florida and Michigan, and for fraudulent omission in California, Florida, Michigan, New Jersey, and South Carolina. Under this rule, Plaintiffs may not recover in fraud for claims that "merely restate contractual obligations," or for claims for

---

[13] Three-year statutes of limitations exist in California, Connecticut, North Carolina, South Carolina, and Washington. Cal. Civ. Pro. § 338; Conn. Gen. Stat. § 52-577; N.C. Gen. Stat. § 1-52(9); S.C. Code § 15-3-530(7); Wash. Rev. Code § 4.16.080(4). A four-year statute of limitations exists in Florida. *See* Fla. Stat. § 95.11. A five-year statute of limitations exists in Illinois. *See* 735 Ill. Comp. Stat. 5/13-215. A six-year statutes of limitation exists in Indiana, Michigan, New Jersey, New York, and South Dakota. *See* Ind. Code § 34-11-2-7(4); Mich. Comp. Laws § 600.5813; N.J. Stat. § 2A:14-1; N.Y. C.P.L.R. § 213; S.D. Codified Laws § 15-2-13(6).

[14] This includes the fraudulent concealment claims of 8 Plaintiffs: Barnes (FL), Chapman (WA), Cirignano (SC), Faussett (CA), Keller (SC), Lutsk (CA), Magallanes (CA), and Meir (CT).

inadequate value governed by warranty law.  *See, e.g., Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1103 (S.D. Fla. 2019).

That is fatal for Plaintiffs' fraud-based claims in these states.  Plaintiffs do not allege any personal injury, but instead claim only economic loss from the allegedly diminished value of their vehicles. As a result, the Plaintiffs Barnes (FL) and Woronko (MI) cannot recover for affirmative misrepresentations; and Plaintiffs Faussett (CA), Lutsk (CA), Magallanes (CA), Barnes (FL), Woronko (MI), Ambrose (NJ), and Cirignano (SC), and Keller (SC) cannot recover for their fraudulent omission-based claims.

### C.  Plaintiffs Fail to State a Claim for Unjust Enrichment.

Plaintiffs' unjust enrichment claims fail because they allege the existence of a written warranty covering their vehicles, (Compl., ECF No. 26, PageID.638-641, ¶¶ 55-64.).  *Solo v. UPS Co.*, 819 F.3d 788, 796 (6th Cir. 2016); *see also Power Process Eng'g Co., Inc. v. ValvTechnologies, Inc.*, No. 16-CV-11524, 2016 WL 7100504, at *4 (E.D. Mich. Dec. 6, 2016).

It is also well settled that unjust enrichment is an equitable remedy and is not available where, as here, Plaintiffs have an adequate legal remedy.  "The plaintiff does not have to actually recover under the legal theory for the equitable claim to be barred.  Instead, the opportunity … to recover under a legal theory is sufficient to bar the equitable claim." *Duffie v. Michigan Grp., Inc. - Livingston*, No. 14-CV-14148, 2016 WL 8259511, at *17 (E.D. Mich. Jan. 15, 2016).

Finally, an unjust enrichment claim will not survive where, as here, the case involves a consumer plaintiff and a remote manufacturer. *See Storey v. Attends Healthcare Prod., Inc.*, No. 15-cv-13577, 2016 WL 3125210, at *13 (E.D. Mich. June 3, 2016) ("[w]hatever benefit [p]laintiff[] conferred on [d]efendant they conferred indirectly."); *see also Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618 (E.D. Mich. 2017); *Sperry v. Crompton Corp.*, 26 A.D.3d 488, 489 (N.Y. App. Div. 2006). All Plaintiffs purchased or leased vehicles from independent dealerships and thus did not confer any benefit directly on GM.

### D. State-Specific Defects in Consumer Protection Claims.

> *1. Plaintiffs' Claims Under the Consumer Protection Acts of Connecticut, Florida, and New York are Untimely.*

In Counts X, XI, and XV, Plaintiffs assert claims under the consumer protection statutes of Connecticut, Florida, and New York. These claims are all untimely on their face and should be dismissed. Causes of action under these statutes accrue "at the occurrence of the deceptive act," *i.e.*, the time of purchase. *E.g.*, *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 965 (Ind. Ct. App. 2000).

The sole Connecticut Plaintiff (Meir) purchased his vehicle in 2015. (Compl., ECF No. 26, PageID.660, ¶ 126.) But the statute of limitations for Connecticut Unfair Trade Practices Act claims is three years, Conn. Gen. Stat. § 42-110g(f), and has been interpreted as a "statute of repose," from which there is no discovery rule, *see Bailey v. Interbay Funding, Inc.*, No. 3:17-CV-1457, 2018 WL 1660553, at *13 (D. Conn. April 4, 2018).

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) has a four-year statute of limitations.  Fla. Stat. § 95.11(3)(f); *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *6 (S.D. Fla. April 30, 2014).  But the sole Florida Plaintiff (Barnes) purchased his vehicle in August 2015.  (Compl., ECF No. 26, PageID.643, ¶ 70.)

New York's General Business Law has a three-year limitations period, which begins to accrue upon delivery, not discovery.  N.Y. Gen. Bus. Law § 349; N.Y. C.P.L.R. § 213(2); *Statler v. Dell*, *Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012). The only New York Plaintiff (Kobel) purchased his vehicle in August 2015.  (Compl., ECF No. 26, PageID.655, ¶ 108.)

Accordingly, these consumer protection claims should be dismissed.

### 2.   *The Michigan Consumer Protection Act Does Not Apply.*

In Count XIII, Plaintiffs assert a claim under the Michigan Consumer Protection Act. Plaintiff's MCPA claim should be dismissed because the statute exempts motor vehicle sales.  The MCPA does not apply to any transaction "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  Mich. Comp. Laws § 445.904(1)(a).  To determine if a transaction is exempt from the MCPA, the relevant inquiry is whether the "transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 206 (2007).

Michigan courts, including this Court, have repeatedly held that motor vehicle sales

are "specifically authorized under" the Michigan Vehicle Code and thus exempt from the MCPA. *Jimenez v. Ford Motor Credit Co.*, No. 322909, 2015 WL 9318913, at \*\*6–7 (Mich. Ct. App. Dec. 22, 2015); *Chaudoin*, 2017 WL 3485803, at \*24 (sale of a recreational vehicle is exempt from the MCPA); *Rosenbaum*, 2016 WL 9775018, at \*3 (claims based on "Toyota's advertising of the Prius and its miles-per-gallon estimate" are exempt from the MCPA). Plaintiff Woronko's claim here is no different than all these other failed MCPA claims for purported vehicle defects. The Court should dismiss Count IV.

### 3. The Court Should Strike Plaintiffs' Class Allegations Brought on Behalf of the South Carolina Class.

In Count XVI, Plaintiff Cirignano purports to bring claims under the South Carolina Unfair Trade Practices Act (SCUTPA) "on behalf of himself and the South Carolina Subclass." (Compl., ECF No. 26, PageID.723, ¶ 362.) Under South Carolina law, however, claims based on SCUTPA must be brought by plaintiffs on an individual rather than collective basis. *See* S.C. Code § 39-5-140(a). Federal courts, including in this District, routinely enforce such state class action bars. *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2015 WL 13834708, at \*5 (E.D. Mich. May 1, 2015). This District is not alone: enforcing state class action bars is the majority approach in federal courts nationwide. *See Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2017 WL 5201079, at \*10 (E.D.N.Y. Nov. 9, 2017) (collecting cases); *Fejzulai v. Sam's W., Inc.*, 205 F. Supp. 3d 723, 726 (D.S.C. 2016); *Davidson v. Apple*, No. 16-CV-04942, 2018 WL 2325426, at \*11 (N.D. Cal. May 8, 2018).

The Court should follow this body of precedent and dismiss the representative claims brought under South Carolina statutes.

## III. The Court Should Strike Plaintiffs' Nationwide Class Claims (Counts I-III, VI, and VII).

Plaintiffs' nationwide class claims should be dismissed because Plaintiffs are residents of only twelve states, who purchased their vehicles in their respective states, and thus they "lack standing to assert claims under the laws of the states in which [they] [do] not reside or in which [they] suffered no injury." *In re Packaged Ice Antitrust Lit.*, 779 F. Supp. 2d 642, 657–58 (E.D. Mich. 2011) (citing cases). Article III standing "is a threshold question in every federal case," and the fact that Plaintiffs seek to represent a class "does not change the fundamental requirement of standing." *Id.* at 653.

Further, dismissing or striking Plaintiffs' nationwide class claim at this stage is both legally proper and efficient. Otherwise, the Court would be tasked with needlessly applying the laws of all fifty states (*i.e.*, every state where a person purchased a purported Class Vehicle). The Sixth Circuit has held that a district court may strike class claims based on the pleadings where those claims are "governed by different States' law." *Pilgrim v. Universal Health Card, LLC*, 660 F. 3d 943, 949 (6th Cir. 2011).

Here, the Court cannot apply the substantive law of the twelve relevant states to the claims of unknown class members who do not live in those states and did not suffer any harm there, because those unknown class members have no significant contacts with the twelve states in question. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) (a

state's substantive law "must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of [the state's] law is neither arbitrary nor fundamentally unfair").  And it is well-settled that warranty and fraud laws differ greatly among the states.  *See, e.g., Cole v. General Motors Corp.*, 484 F.3d 717, 726 (5th Cir. 2007) ("[T]here are numerous variations in the substantive laws of express . . . warranty").  These variations in state law predominate over any common issues, making the proposed class unmanageable.  *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (rejecting class claims "[b]ecause these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable.").

Accordingly, Plaintiffs' nationwide class claims should be dismissed or stricken under Rules 12(b)(6) and 23(d)(1)(D).

## CONCLUSION

For these reasons, GM respectfully requests dismissal of all claims.

November 18, 2020                           Respectfully submitted,

                                            */s/* Mohamed M. Awan
                                            Jeffrey K. Lamb
                                            Mohamed M. Awan
                                            Laura E. Biery
                                            Nicholas A. Burandt
                                            HONIGMAN LLP
                                            2290 First National Building
                                            660 Woodward Avenue
                                            Detroit, MI 48226-3506
                                            Telephone: (313) 465-7000
                                            Facsimile: (313) 465-7405
                                            jlamb@honigman.com

mawan@honigman.com
lbiery@honigman.com
nburandt@honigman.com

*Counsel for General Motors LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on November 18, 2020 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.


/s/ Mohamed M. Awan
Mohamed M. Awan

*Counsel for General Motors LLC*