# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

ROBERT AMBROSE, SCOTT
BARNES, RICHARD CHAPMAN,
RYAN CIRIGNANO, CHRIS
FAUSSETT, MILAN GRUJIC, DAVID
KELLER, JOHN KOBEL, DANIEL
LAWSON, STEPHEN LUTSK, LORI
MAGALLANES, NOAM MEIER,
ERIC OSTRANDER, ROBERT
OVERTURF, and MIKE WORONKO,
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

   v.

GENERAL MOTORS LLC,

        Defendant.

Case No.: 4:19-cv-13449

Hon. Stephanie Dawkins Davis

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**TABLE OF CONTENTS**

COUNTER-STATEMENT OF ISSUES PRESENTED .......................................... iv

TABLE OF MOST APPROPRIATE OR CONTROLLING AUTHORITIES ....... vi

TABLE OF AUTHORITIES .................................................................... vii

I.    INTRODUCTION ....................................................................... 1

II.   LEGAL STANDARD .................................................................. 4

III.   ARGUMENT ............................................................................ 5

  A.  Plaintiffs Have Sufficiently Pled Their Statutory Consumer Protection and Common Law Fraudulent Concealment Claims ................................... 5

    1.  Plaintiffs Have Sufficiently Pled their Omission-Based Claims .............. 5

    2.  Plaintiffs State Claims Under their Consumer Protection Statutes and for Common Law Fraudulent Concealment ......................................... 8

      a.  Plaintiffs Adequately Allege Pre-Sale Knowledge of the Defect .......... 8

      b.  GM Had a Duty to Disclose ................................................. 11

        i.   A duty existed based on GM's superior knowledge ......................... 11

        ii.   A duty existed based on the false impression created by GM's unduly narrow recall .................................................................. 13

        iii.  A duty existed because a material, safety defect is at issue ............. 14

      c.  Plaintiffs' Claims are Not Time Barred ................................... 15

      d.  The Economic Loss Rule is Inapplicable ................................. 19

      e.  Plaintiffs' Michigan Consumer Protection Act (MCPA) Claim is Not Precluded ................................................................... 20

      f.  Plaintiffs' Allegations on Behalf of the South Carolina Class Are Proper ...................................................................... 21

  B.  Plaintiffs' Warranty Claims are Well-Pled ................................. 22

    1.  The Time and Mileage Limitations in GM's Warranty are Unconscionable and Unenforceable ........................................... 22

2.   The Plaintiffs' Implied Warranty Claim is not Limited to the Time and Mileage Limitations of the Express Warranty .................................................24

    a.   Plaintiffs' Vehicles are Not Merchantable.............................................24

        i.   Plaintiffs' Claims Are Not Barred for Lack of Notice .....................27

        ii.   Plaintiffs' Warranty Claims are Not Barred by Statutes of Limitations 30

        iii.   Plaintiffs' Implied Warranty Claims are Not Precluded for Lack.....32 of Privity...................................................................................................32

        iv.   Plaintiffs State a Viable Song-Beverly Act Claim ...........................33

        v.   Plaintiffs State Viable Magnuson-Moss Warranty Act Claims.........34

C.   Plaintiffs' Unjust Enrichment Claims are Well Pled ...................................34

D.   Plaintiffs Can Properly Plead Nationwide Class Claims ............................35

IV.   CONCLUSION ...........................................................................................37

## COUNTER-STATEMENT OF ISSUES PRESENTED

1.  Have Plaintiffs have sufficiently pled, with particularly, their fraud claims where Defendant knew and yet failed to disclose that the Class Vehicles contain a latent, dangerous defect and where such claims are not otherwise barred by the economic loss doctrine?

    Plaintiffs answer: Yes.

2.  Have Plaintiffs sufficiently pled that Defendant had exclusive prior knowledge of the defect at issue?

    Plaintiffs answer: Yes

3.  Have Plaintiffs sufficiently pled that Defendant had a duty to disclose the safety defect here, where Plaintiffs have alleged that their experience with the subject vehicles included enduring hazardous, potentially life-threatening situations and/or excessive repairs without offer of compensation, even upon demand for such renumeration?

    Plaintiffs answer: Yes.

4.  Have Plaintiffs sufficiently pled their statutory consumer protection claims?

    Plaintiffs answer: Yes.

5.  Have Plaintiffs sufficiently pled their express warranty claims, where they have alleged facts to support that GM's warranty is unconscionable and unenforceable?

    Plaintiffs answer: Yes.

6.  Have Plaintiffs sufficiently pled their implied warranty claims where the Class Vehicles are not merchantable?

    Plaintiffs answer: Yes.

7.  Have Plaintiffs sufficiently pled their Magnuson-Moss Warranty Act claims because Plaintiffs allege viable state law warranty claims?

    Plaintiffs answer: Yes.

8.  Have Plaintiffs sufficiently pled that their claims are not barred at this stage of the proceeding by the statute of limitations?

    Plaintiffs answer: Yes.

9.  Have Plaintiffs sufficiently pled their unjust enrichment claims?

    Plaintiffs answer: Yes.

10. Have Plaintiffs established that they are not precluded from asserting claims on behalf of a Nationwide Class?

    Plaintiffs answer: Yes.

## <u>TABLE OF MOST APPROPRIATE OR CONTROLLING AUTHORITIES</u>

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)

*Fallick v. Nationwide Mut. Ins. Co*., 162 F.3d 410 (6th Cir. 1998)

*Francis v. General Motors, LLC*, 2020 WL 7042935 (E.D. Mich. Nov. 30, 2020)

*In re Duramax Diesel Litig.,* 298 F. Supp. 3d 1037 (E.D. Mich. 2018)

*In re FCA US LLC Monostable Elec. Gearshift Litig*., 280 F. Supp. 3d 975 (E.D. Mich. 2017)

*In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig*., 406 F. Supp. 3d 618 (E.D. Mich. 2019)

*In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014)

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 45 F. Supp. 3d 706 (N.D. Ohio 2014)

*Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929 (C.D. Cal. 2012)

*Matanky v. General Motors, LLC*, 370 F. Supp. 3d 772 (E.D. Mich. 2019)

*Michaels Bldg. Co. v. Ameritrust Co*., 848 F.2d 674 (6th Cir. 1988)

*Persad v. Ford Motor Co.*, 2018 WL 3428690 (E.D. Mich. July 16, 2018)

*Roe v. Ford Motor Co.*, 2019 WL 3564589 (E.D. Mich. Aug. 6, 2019)

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)

# TABLE OF AUTHORITIES

## CASES

*Afzal v. BMW N. Am.*, *LLC*, 2017 WL 3207232 (D.N.J. July 27, 2017) ..................9

*Aguilar v. General Motors LLC*, 2013 WL 5670888 (E.D. Cal. Oct. 16, 2013).....25

Allen v. American Honda Motor Co., Inc., 264 F.R.D. 412 (N.D. Ill. 2009) .........27

*Amato v. Subaru of Am., Inc.,* 2019 WL 6607148 (D.N.J. Dec. 5, 2019) ..............13

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) .......................... 15, 30

*Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277 (N.D. Ga. 2018) ..........12

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, 2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ....................................................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................4

*Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626 (E.D. Mich. 2019) ........................36

*Bryde v. General Motors, LLC*, 2016 WL 6804584 (N.D. Cal. Nov. 17, 2016).....10

*Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614 (M.D.N.C. 2006)...........23

*Canfield v. FCA US LLC*, 2019 WL 1089798 (D. Del. Mar. 8, 2019)............. 28, 29

*Carlson v. Gen. Motors Corp.*, 883 F.2d 287 (4th Cir. 1989) .................................22

Cats v. Monaco RV, LLC, 2016 WL 5253204 (W.D. Wash. Sept. 22, 2016) ........27

*City of Wyoming v. Proctor & Gamble Co.*, 210 F. Supp. 3d 1137 (D. Minn. 2016) .................................................................................................................................30

*Cohan v. Pella Corp.*, 2015 WL 6465639 (D.S.C. Oct. 26, 2015)............................7

*Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996)..............................................28

*Counts v. General Motors, LLC*, 237 F. Supp. 3d 572 (E.D. Mich. 2017) ...... 36, 37

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983) ..........................................................................................................30

*Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015)......................................34

*De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387 (S.D.N.Y. 2015)............32

*Directv Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007) ....................................................4

*Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011) .................................14

*Duncan v. Nissan N. Am., Inc.*, 305 F. Supp. 3d 311 (D. Mass. 2018) ............ 23, 24

*Eisen v. Porsche Cars N. Am., Inc.*, 2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ...8

*Elward v. Electrolux Home Prod., Inc.*, 264 F. Supp. 3d 877 (N.D. Ill. 2017).......31

*Engleson v. Unum Life Ins. Co. of Am.*, 723 F.3d 611 (6th Cir. 2013) ..................19

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)........................35

*Francis v. General Motors, LLC*, 2020 WL 7042935 (E.D. Mich. Nov. 30, 2020) ................................................................................................................... passim

*Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853 (E.D. Mich. 2019).....................4, 5

*Giura v. Bartolomeo*, 2010 WL 3767563 (Mich. Ct. App. Sept. 28, 2010)............20

*Hall v. General Motors, LLC*, 2020 WL1285636 (E.D. Mich. Mar. 18, 2020) ......10

*Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358 (N.J. 1960)............................14

*Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008) ......36

Hubbard v. Gen. Motors Corp., 1996 WL 274018 (S.D.N.Y. May 22, 1996)........33

*Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747 (N.D. Tex. 2012) .13

*In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982 (E.D. Mich. 2014)........ 36, 37

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001) ............................................................................................. 28, 37

*In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037 (E.D. Mich. 2018)........ vi, 7, 36

*In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017).......................................................................................... 5, 21, 30, 34

*In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618 (E.D. Mich. 2019) ............................................................................ passim

*In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014)... 9, 20, 27, 32

*In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801 (S.D. Ohio 2012) ........ 23, 24

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2009 WL 937256 (N.D. Ill. Apr. 6, 2009) ..........................................................................................8

*In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324 (S.D. Fla. 2016) ...12

*In re Toyota Motor Corp., Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 754 F. Supp. 2d 1208 (C.D. Cal. 2010) .........13

*In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160 (D.N.J. May 8, 2017) ...............................................................................................................14

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942 (N.D. Ohio 2009) ....................................................................................7, 26

*In re: McCormick & Co., Inc.*, 217 F. Supp. 3d 124 (D.D.C. 2016) ......................36

*Jimenez v. Ford Motor Credit Co.*, 2015 WL 9318913 (Mich. Ct. App. Dec. 22, 2015) ................................................................................................................21

*Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 948 (C.D. Cal. 2012) vi, 27, 32

*Kinzer v. Remington Arms Co., Inc.*, 2010 WL 11451121 (W.D. Okla. Sept. 1, 2010) ................................................................................................................33

*Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223 (S.D. Fla. 2014) ........................32

*Lalli v. FCA US, LLC (In re FCA US, LLC Monostable Elec. Gearshift Litig.)*, 446 F. Supp. 3d 218 (E.D. Mich. 2020) ......................................................................20

*Lohr v. Nissan N. Am., Inc.*, 2017 WL 1037555 (W.D. Wash. Mar. 17, 2017) ......23

Lopez v. Swyer, 62 *N.J.* 267, 300 *A.*2d 563 (1973)...................................................17

*Majdipour v. Jaguar Land Rover N. Am., LLC*, 2015 WL 1270958 (D.N.J. Mar. 18, 2015) ............................................................................................................12

*Matanky v. General Motors, LLC*, 370 F. Supp. 3d 772 (E.D. Mich. 2019).........6, 9

*McQueen v. Yamaha Motor Corp., U.S.A.*, 2020 WL 5630006 (D. Minn. Sep. 21, 2020) ...........................................................................................................24

*Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) .............................................35

*Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674 (6th Cir. 1988)........................8

*Mingo v. Fed Cmty.*, 2020 WL 5258481 (E.D. Mich. Sept. 3, 2020).....................15

Panda Capital Corp. v. Kopo Intern., Inc., 662 N.Y.S.2d 584 (1997)....................28

*Persad v. Ford Motor Co.*, 2018 WL 3428690 (E.D. Mich. July 16, 2018) ... passim

*Phillips v. Ford Motor Co.*, 2015 WL 4111448 (N.D. Cal. July 7, 2015) ... 9, 31, 33

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) .................37

Pro Con Inc. v. Coastal Wall Systems, Inc. 2004 WL 2289598 (Conn. Super. Sept. 13, 2004) ........................................................................................................33

*RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 676 F. Supp. 2d 9 (D. Conn. 2009) .................................................................................................................18

*Recalde v. Werner & Pfleiderer*, 1997 WL 200753 (Conn. Super. Ct. Apr. 14, 1997) ...........................................................................................................27

*Rembisz v. Lew*, 590 F. App'x 501 (6th Cir. 2014) ...............................................18

*Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888 (N.D. Cal. 2015) ...............15

*Rikos v. Proctor & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015)..............................37

*Roe v. Ford Motor Co.*, 2019 WL 3564589 (E.D. Mich. Aug. 6, 2019) .................27

*Rosenbaum v. Toyota Motor Sales, USA, Inc*., 2016 WL 9775018 (E.D. Mich. Oct. 21, 2016) ...................................................................................................21

Rothe v. Maloney Cadillac, Inc., 518 N.E.2d 1028 (Ill. 1988)................................33

*Sater v. Chrysler Grp., LLC*, 2015 WL 736273 (C.D. Cal. Feb. 20, 2015) ...........31

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ..21

Skeen v. BMW of N. Am., LLC, 2014 WL 283628 (D.N.J. Jan 24, 2014) (compiling cases) ...............................................................................................23

*Sloan v. General Motors LLC*, 287 F. Supp. 3d 840 (N.D. Cal. 2018) ..................32

*Speier-Roche v. Volkswagen Grp. Of Am. Inc.*, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014) ...................................................................................................18

*Statler v. Dell, Inc*., 841 F. Supp. 2d 642 (E.D.N.Y. 2012).....................................19

*Strzakowlski v. Gen. Motors Corp.*, 2005 WL 2001912 (D.N.J. Aug. 16, 2005)....27

Szajna v. Gen. Motors Corp., 503 N.E.2d 760 (Ill. 1986) ......................................33

*Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011)....23

*Tae Hee Lee v. Toyota Motor Sales*, *U.S.A., Inc.,* 992 F. Supp. 2d 962 (C.D. Cal. 2014) ..........................................................................................................26

*Troup v. Toyota Motor Corp.*, 545 F. App'x 668 (9th Cir. 2013)............................26

*Vertrue v. Vertrue, Inc. (In re Vertrue Mktg. & Sales Practices Litig.)*, 719 F.3d 474 (6th Cir. 2013)................................................................................16

*Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174 (N.D.N.Y. 2009)...............33

*Weber Auto. Corp. v. Metaldyne LLC*, 2020 WL 1968669 (Mich. App. Apr. 23, 2020) .........................................................................................................24

*Weidman v. Ford Motor Co.*, 2019 WL 3003693 (E.D. Mich. July 10, 2019) .......26

*WEL Cos., Inc. v. Haldex Brake Prods. Corp*., 467 F. Supp. 3d 545 (S.D. Ohio June 16, 2020).........................................................................................23

*Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788 (6th Cir. 2012) ..............................5

**STATUTES**

735 Ill. Comp. Stat. 5/13-215 .................................................................17

Cal Code Civ Proc § 338 .......................................................................16

Conn. Gen. Stat. § 52-595 .....................................................................17

Fla. Stat. § 95.031 .................................................................................17

Ind. Code Ann. § 34-11-5-1 ...................................................................17

Mich. Comp. Laws § 600.5855 .............................................................16

N.C. Gen. Stat. § 1-52(9) .......................................................................16

N.Y. C.P.L.R. 213(8) .............................................................................16

Rev. Code Wash. (ARCW) § 4.16.080 ...................................................16

S.C. Code § 15-3-530(7) ........................................................................16

S.D. Codified Laws § 15-2-3 ..................................................................16

**RULES**

Fed. R. Civ. P. 23 ...................................................................................35

Uniform Commercial Code Section 2-302(2) ........................................23

## I.  __INTRODUCTION__

This action arises from the sale or lease of 2015 – 2016 Chevrolet Colorado and GMC Canyon vehicles manufactured by Defendant General Motors LLC ("GM") before January 6, 2015 and after March 17, 2015 (the "Class Vehicles") equipped with a defective electrical connection within the torque-sensor harness connector, causing the vehicles to lose power steering while driving under a variety of conditions (the "defect").

The defect, which GM failed to disclose to the Plaintiffs and Class Members, is a major safety concern because its manifestation results in a significant and abrupt reduction of the Class Vehicles' power steering assist, making turning of the steering wheel difficult and inhibiting a driver's ability to control the vehicle. ECF No. 26, Plaintiffs' First Amended Class Action Complaint ("AC")[1] ¶ 6. GM acknowledges the inherent danger of the defect, conceding—in the context of a similar, prior recall—that the loss of power steering "could result in an increased risk of a crash." ¶ 44.

All Plaintiffs have experienced manifestation of the defect, many on a significant number of occasions and some on a daily basis. ¶¶ 67, 72, 78, 87, 93, 100, 105, 110, 117, 123, 128, 133, 140, 146-147, 154. Indeed, many Plaintiffs recount circumstances where they were at risk of or narrowly avoided accidents after losing power steering while driving, and most Plaintiffs have paid hundreds if not thousands

---

[1] All references to the Amended Complaint (ECF No. 26) are cited herein as "¶ __".

of dollars to attempt to remedy the defect and in an effort to ensure their safety. *Id*; *see also* ¶¶ 74, 78-80, 82, 87, 93, 95, 100, 105, 106, 113, 118-119, 123-124, 129, 141, 147-148, 155.

GM was undoubtedly aware of the defect. On January 27, 2016, GM notified the National Highway and Traffic Safety Administration ("NHTSA") Office of Defects Investigation ("ODI") of its intent to recall 2,988 model year 2015 Chevrolet Colorado and GMC Canyon vehicles manufactured from January 6, 2015 to March 17, 2015 for the exact defect at issue here (namely, "a poor electrical connection within the steering gear connector [that] may cause a loss of power steering assist"). ¶ 40. GM has not, however, disclosed the existence of the defect in the Class Vehicles. Similarly, in or around June 2018, GM instituted a "customer satisfaction program" for approximately 6,261 2015 model year Chevrolet Colorado and GMC Canyon vehicles further acknowledging a problem with the electronic torque sensor. ¶ 41. Specifically, GM advised such vehicles:

> [M]ay have been built with a connector between the electric power steering motor and torque sensor that has a potential for fretting corrosion. If this condition exists, power steering may be lost, and the driver may experience unanticipated increased steering effort as the vehicle reverts to manual steering. A chime will also sound in the vehicle, and a "Service Power Steering" message will appear on the Driver Information Center (DIC). Manual steering functionality will be maintained but will require additional effort, particularly at lower speeds.

*Id*. The problems with Class Vehicles were significant enough that on or around May 23, 2019, the NHTSA ODI opened a Recall Query to assess the scope of the January

2

2016 recall and to identify the causes and effects of electric power steering failure in all 2015 and 2016 Class Vehicles. ¶ 43. NHTSA ODI noted that subsequent to the January 2016 recall, it had received 50 Vehicle Owners Questionnaires reporting a loss of electric power steering in Model Year 2015 Colorado and Canyon vehicles. *Id.*

Putting GM on further notice, in early 2014—immediately prior to the introduction of the Class Vehicles—GM recalled approximately 1.9 million vehicles for problems implicating power steering and has also recalled 2014-2016 Chevrolet SS Vehicles for—if the not the exact same—a problem affecting the electrical connection within the torque-sensor harness connector resulting in a loss of power steering. ¶¶ 43-45.

Compounding GM's knowledge, GM was aware of the defect from internal customer assistance inquiry records and a significant number of consumer complaints (by Plaintiffs' count, over 400) made to NHSTA. ¶¶ 51-54. These consumer complaints filed with NHTSA are delivered to GM, reviewed by GM, and analyzed by GM's engineers. ¶ 54. Moreover, GM has represented in its public securities filings that it conducts pre-production testing of its vehicles, as well as testing of customer vehicles at specified mileages. ¶ 37. Such testing would undoubtedly have alerted GM to the defect prior to the sale and/or lease of Class Vehicles.

Reasonable consumers expect that a vehicle's electronic power steering torque assist sensor (the "sensor")—which isn't part of regular maintenance and service—

3

will last the lifetime of the vehicle. ¶ 56. Yet the sensor in the Class Vehicle failed as early as, for example, only 22,000 miles. ¶ 134. Moreover, the defect is of such a nature that the Plaintiffs could not have reasonably discovered it without experiencing it firsthand (as all Plaintiffs did) and exposing themselves to an unreasonable safety risk. ¶ 61. Notwithstanding GM's knowledge of the defect, at no point did it inform, warn, or otherwise disclose to unsuspecting consumers that the Class Vehicles contain a dangerous defect. ¶ 60. Because of GM's inadequate action and silence, many consumers are unaware that they purchased, and continue to drive, unsafe and unreliable vehicles. As GM knows, a reasonable person would consider the defect important and would either not purchase or lease a vehicle with the defect were the defect disclosed in advance or would pay substantially less for the vehicle. ¶ 63.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a motion under Rule 12(b)(6), "a court must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 868-69 (E.D. Mich. 2019) (quoting *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "The purpose of Rule 9(b) is to put defendants on notice of the nature of the claim." *Gamboa*, 381 F. Supp. 3d at 872 (citing *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012)). Thus, "[a]lthough Rule 9(b) heightens the pleading standard, it always must be read 'against the backdrop' of Fed. R. Civ. P. 8, which aims simply to put a defendant on notice of the claims against him so that he may reasonably respond [to] the allegations in the complaint." *Id.*

## III.   **ARGUMENT**

### A. Plaintiffs Have Sufficiently Pled Their Statutory Consumer Protection and Common Law Fraudulent Concealment Claims

#### 1. *Plaintiffs Have Sufficiently Pled their Omission-Based Claims*

GM moves to dismiss Plaintiffs' consumer protection and material omission claims, arguing that Plaintiffs do not meet 9(b)'s particularity requirements. ECF No. 30, PageID.1388-92. But a claim for fraudulent omission is sufficient "if it alleges that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1003 (E.D. Mich. 2017); *Persad v. Ford Motor Co.*, 2018 WL 3428690, at *3 (E.D. Mich. July

16, 2018) ("Rule 9(b) also provides that '[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.' Thus, it 'does not require a plaintiff to allege specific facts related to the defendant's state of mind when the allegedly fraudulent statements [or omissions] were made.' Instead, it is sufficient to plead 'the who, what, when, where, and how' of the allegedly fraudulent statements or omissions and then allege generally that those statements or omissions were made with the requisite intent.") (internal citation omitted).

Here, Plaintiffs have pled with particularity the "who" (GM), the "what" (knowing about, yet failing to disclose, the defect, ¶ 3), the "when" (beginning in 2015, when GM first marketed the Chevrolet Colorado and GMC Canyon, ¶ 8), the "where" (press kits and other marketing materials, ¶ 9), and the "how" (if Plaintiffs knew about the alleged defect, they would have paid less for or not bought/leased their cars, ¶¶ 29-54). This Court has consistently found similar omission claim allegations sufficient. *See, e.g., Francis v. General Motors, LLC*, 2020 WL 7042935, at \*13-16 (E.D. Mich. Nov. 30, 2020);[2] *Matanky v. General Motors, LLC*, 370 F. Supp. 3d 772, 789 (E.D. Mich. 2019); *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 641 (E.D. Mich. 2019) ("*In re GM Air*").

GM's argument that Plaintiffs' claims must be dismissed because they have allegedly failed to plead the "omissions each specific Plaintiff actually read or saw,"

_____

[2] All unpublished cases cited herein are attached as Exhibit 1.

6

(ECF No. 30, PageID.1391), is nonsensical on its face.  "Like Sherlock Holmes' dog that did not bark in the night, an actionable omission obviously cannot be particularized as to the time, place and contents of the false representations or the identity of the person making the misrepresentation." *Cohan v. Pella Corp*., 2015 WL 6465639, at *3 (D.S.C. Oct. 26, 2015) (internal citations and quotations omitted); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,* 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009) ("Requiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission."). In any event, Plaintiffs have each pled the factual circumstances giving rise to their claims with particularity, including the names and locations of the GM dealerships where Plaintiffs purchased their vehicles, their reasons for purchasing their vehicles, the dates of purchase, how safety disclosures about the defect would have altered their purchasing decision, how such disclosures never came, and GM's failure to pay for necessary repairs or even acknowledge the obvious defect. This is plainly enough to satisfy Rule 9(b), which "does not require omniscience …." *See In re Duramax Diesel Litig.,* 298 F. Supp. 3d 1037, 1055 (E.D. Mich. 2018).

GM cites to three cases to support their position, two of which are out of circuit

and one that involves affirmative misrepresentations rather than omissions.[3] GM insists that Plaintiffs must point to specific advertisements where the defect might have been disclosed. Not only is this the incorrect standard for omission claims in the Sixth Circuit, but Plaintiffs have, in fact, provided examples of marketing materials where the defect could have been disclosed. ¶ 36. Thus, Plaintiffs have adequately pled their omission claims and, as detailed below, have alleged that GM knew of the defect before sale. GM's motion to dismiss these claims should be denied.

### 2. Plaintiffs State Claims Under their Consumer Protection Statutes and for Common Law Fraudulent Concealment

#### a. Plaintiffs Adequately Allege Pre-Sale Knowledge of the Defect

Rule 9 allows knowledge to be alleged generally where specific details are in the possession of the defendant. *Persad*, 2018 WL 3428690, at *3 ("To the extent Defendant contends that Plaintiffs have failed to plead Defendant's knowledge of the Defect with particularity, the argument is not well-taken. Plaintiffs have generally alleged such knowledge, and that is all that is required by Rule 9(b)."); *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1988) ("Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action

---

[3] *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2009 WL 937256, at *6 (N.D. Ill. Apr. 6, 2009) involved allegations of affirmative misrepresentations within commercials that products were manufactured in the United States. *Eisen v. Porsche Cars N. Am., Inc.*, 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012) failed the particularity standard not only because it did not include specific advertisements but because the complaint failed to identify which parts of the car at issue were affected by the alleged defect. Neither case is controlling or relevant.

where the facts underlying the claims are within the defendant's control."). Moreover, Plaintiffs plausibly allege that GM's awareness of the defect came from several discrete sources, which, taken together, support an inference of knowledge. *See In re GM Air*, 406 F. Supp. 3d at 637 (plaintiffs' allegations of knowledge, "[w]hen taken together, and accepted as true for the purposes of GM's motion to dismiss, these allegations . . . plausibly establish GM's knowledge of the [defect.]"); *Matanky*, 370 F. Supp. 3d at 791 (Plaintiffs need only "allege generally that [GM's fraudulent] statements or omissions were made with the requisite intent [and knowledge]."); *Francis*, 2020 WL 7042935, at *15. Consistent with this District's prior holdings, Plaintiffs plead that GM was aware of the defect before sale.

As mentioned above, when determining whether a plaintiff has alleged pre-sale knowledge, courts consider the totality of the facts taken together, not the sufficiency of any one individual piece of evidence. Customer complaints and allegations of internal testing data are appropriate evidence of pre-sale knowledge of defects. *See*, *e.g.*, *In re GM Air*, 406 F. Supp. 3d at 637; *Phillips v. Ford Motor Co*., 2015 WL 4111448, at **9-10 (N.D. Cal. July 7, 2015); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 957-58 (N.D. Cal. 2014); *Afzal v. BMW N. Am.*, *LLC*, 2017 WL 3207232, at *6 (D.N.J. July 27, 2017).

Here, Plaintiffs allege these facts and more, including most prominently that GM disclosed and issued a recall for the same defect in earlier models of the same

9

vehicle.[4] GM had also previously recalled millions of other vehicles for similar electric power steering parts *just prior* to the introduction of the Class Vehicles. ¶ 3. Further, because GM develops and tests common steering components for its vehicle lines in a centralized manner, it is more than plausible that it was on notice of the defect in these components. ¶ 37, 40; *see also In re GM Air*, 406 F. Supp. 3d at 637. Additionally, the fact that replacement parts in Class Vehicles were also long on nationwide backorder, *see* ¶¶ 54, 297, 330, the high volume of consumer complaints (including pre-sale[5]) and the prior recall notice show that GM knew of the defect.[6]

"GM attempts to parse the allegations regarding the various sources of its alleged knowledge and consign each to immateriality, but that is not how pleadings

---

[4] It is a fair inference at the pleading stage that manufacturer action of this kind is preceded by an "accretion of knowledge," which would encompass knowledge that the scope of the problem extended beyond the confines of the unduly narrow recall. *See Bryde v. General Motors, LLC*, 2016 WL 6804584, at * 10 (N.D. Cal. Nov. 17, 2016).

[5] GM admits that 26 consumer complaints were posted in 2015 and 2016, ECF No. 30, PageID.1396. Most courts have held that this shows knowledge. *See, e.g., In re GM Air*, 406 F. Supp. 3d at 636 (finding that evidence of consumer complaints could plausibly establish GM's knowledge). In any event, contesting the weight of such sources is premature here.

[6] Defendant attempts to analogize this case to *Hall v. General Motors, LLC*, 2020 WL1285636, at *5 (E.D. Mich. Mar. 18, 2020), a decision limited to the specific factual deficiencies in that complaint (and where the Court allowed plaintiffs to replead). Specifically, the Court in *Hall* found that plaintiffs did not provide any information about the testing procedures at GM. The *Hall* plaintiffs also failed to identify how orders for replacement parts would put GM on notice of the issue with the defect, while the *In Re GM Air* plaintiffs noted that the replacement parts were on national backorder, giving GM notice that there was an unusual number of problems with that particular part. *Hall,* 2020 WL 1285636, at *8.

are read by federal courts. The allegations are construed as a whole and read in a light most favorable to the plaintiffs, not piecemeal and in a vacuum as the defendant would take them." *Francis*, 2020 WL 7042935, at *15. Plaintiffs have sufficiently pled GM's pre-sale knowledge.

### b. *GM Had a Duty to Disclose*

#### i. A duty existed based on GM's superior knowledge

As stated above, the amended Complaint alleges that GM has long known about the defect and that this superior knowledge gave rise to a duty to disclose the defect to consumers like Plaintiffs. Plaintiffs have fairly put GM on notice of their duty to disclose by pleading, *on the one hand*, GM's pre-production testing, tracking of defects consistent with industry norms, and specific attention to the defect as illustrated by its partial recall, and *on the other hand*, consumers' inability to readily discover the defect since they lack access to these same resources and because the nature of the defect is not detectable from even the most rigorous pre-purchase inspection that a reasonable consumer could undertake. *See* ¶¶ 74, 79, 84.

Numerous courts have held that auto manufacturers have a duty to disclose vehicle or equipment defects when they possess superior knowledge. *In re GM Air*, 406 F. Supp. 3d at 637-38 ("Plaintiffs plausibly alleged that (1) GM knew of the AC Defect before Plaintiffs purchased their vehicles, (2) GM 'willfully failed to disclose the [AC] Defect' and 'misrepresented the [air conditioning] systems in the Class

Vehicles as functional'; (3) these facts were 'material' to Plaintiffs, and (4) Plaintiffs 'were not able to reasonably discover the AC [ ] Defect' on their own and 'had no realistic ability to discern that the Class Vehicles were defective until — at the earliest — after the AC [] Defect caused their [Air Conditioning] Systems to [fail].'"). Thus, GM had a duty to disclose. *Id*. at 638-39 (citing *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2015 WL 1270958, at *13 (D.N.J. Mar. 18, 2015); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1295-96 (N.D. Ga. 2018); *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1337-38 (S.D. Fla. 2016)).

Here, akin to *In re GM Air*, Plaintiffs plausibly alleged that (1) GM had superior knowledge of the defect before Plaintiffs purchased their vehicles; (2) GM willfully failed to disclose the defect and misrepresented the power assist steering systems in the Class Vehicles as functional; (3) these facts were material to Plaintiffs; and (4) Plaintiffs were not able to reasonably discover the defect on their own and had no realistic ability to discern that their vehicles were defective until after the defect caused their power steering to fail.

GM claims its duty to disclose the defect is "belied by Plaintiff's many allegations of public information about the alleged defect, such as the complaints to NHTSA and on third-party websites." ECF No. 30, PageID.1382. But this Court has already rejected such an argument. *Persad*, 2018 WL 3428690, at *3; *see also In re Toyota Motor Corp., Unintended Acceleration Marketing, Sales Practices, and*

12

*Products Liability Litigation*, 754 F. Supp. 2d 1208, 1227 (C.D. Cal. 2010) (reasonable consumers "would not have performed such a search, nor would they be expected to ….").

> ii. A duty existed based on the false impression created by GM's
> unduly narrow recall

Courts have found that the law imposes a duty to disclose the truth when a defendant conveys a false impression. *See, e.g., Amato v. Subaru of Am., Inc.,* 2019 WL 6607148, at *21 (D.N.J. Dec. 5, 2019) ("'ambiguous partial disclosures or statements by [manufacturers]' may impose such a duty" (alteration in original)); *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) ("there is always a duty to correct one's own prior false or misleading statement"). Plaintiffs have pled that GM's partial recall left a false impression because it was "an incomplete affirmative disclosure from which a plausible inference can be drawn – that because other older GM vehicles suffered from well-publicized electric power steering defects as detailed above, a reasonably prudent consumer might expect that GM had rectified this issue in the newer models, including the VIN range that was outside of GM's recall Bulletin No. 15595A." ¶ 46. In *Persad*, this Court similarly found that a recall of certain model year Ford Explorers that suffered from exhaust fume defects could plausibly cause "a reasonably prudent consumer" to "expect that Ford had rectified the issue in the newer models*." Persad*, 2018 WL 3428690, at *3. This impression was notably reinforced by GM when Plaintiffs' concerns were

brushed aside as fluke occurrences, rather than a common defect, by its corporate employees and dealerships after they inquired about the defect and/or brought their vehicles in for repairs. *See, e.g.,* ¶¶ 68, 79, 88, 95, 101, 106, 112, 118-119, 124, 129, 134, 141-142, 148, 149-150, 155-156. In short, GM's "ongoing deception and failure to disclose the defect despite having knowledge of same" is actionable. *See In re Volkswagen Timing Chain Prod. Liab. Litig.,* 2017 WL 1902160, at *26 (D.N.J. May 8, 2017).

### iii.   A duty existed because a material, safety defect is at issue

Vehicle manufacturers have a duty to disclose safety defects. *See Francis*, 2020 WL 7042935, at *17 (stating that a duty to disclose exists under various states' law "where the plaintiffs plausibly alleged that the … defect allegedly implicates vehicle safety."); *see also Henningsen v. Bloomfield Motors, Inc*., 32 N.J. 358, 387 (N.J. 1960) (stating that a car manufacturer is "under a special obligation in connection with the construction, promotion and sale of his cars" because an automobile is "a common and necessary adjunct of daily life."); *Doll v. Ford Motor Co*., 814 F. Supp. 2d 526, 546 (D. Md. 2011) (holding that vehicle manufacturers have a duty to disclose vehicle or equipment defects). Plaintiffs have pled the defect here is a safety defect and provided several examples where consumers, including Plaintiffs, have narrowly avoided accidents when the defect has manifested. *See* ¶¶ 67, 72, 78, 81, 87, 92-93, 100, 105, 110, 117-18, 123, 128, 133, 140, 146-47, 154.  This is clearly sufficient. *See*

14

*Reniger v. Hyundai Motor Am*., 122 F. Supp. 3d 888, 898 (N.D. Cal. 2015) (finding

loss of power steering and brakes is a safety defect giving rise to a duty to disclose).

### c.   *Plaintiffs' Claims are Not Time Barred*

GM prematurely and incorrectly contends that the statute of limitations bars

Counts X, XI, and XV which are brought under the laws of Connecticut, Florida, and

New York, respectively, and Count VI which is brought on a nationwide basis or in

the alternative under each Plaintiff's state law.

First, statute of limitations challenges are generally not appropriate on a motion

to dismiss brought under Rule 12(b)(6), and a "plaintiff need not respond to a motion

to dismiss with affirmative matter raising a triable issue of fact on an affirmative

defense." *Mingo v. Fed Cmty*., 2020 WL 5258481, at *3 (E.D. Mich. Sept. 3, 2020). A

statute of limitations challenge is only appropriate where a "plaintiff affirmatively

pleads himself out of court. . . Where a plaintiff does not affirmatively plead himself

out of court, however, a statute of limitations challenge is prematurely raised in a

motion to dismiss." *Id*. Here, none of Plaintiffs' allegations suggest that these claims

are time barred.

Second, and despite the premature raising of this issue, Plaintiffs have not

exceeded the statute of limitations. The claims of all class plaintiffs tolled when this

action was originally filed on November 21, 2019. *See American Pipe & Constr. Co.*

*v. Utah*, 414 U.S. 538, 554 (1974) (holding that the commencement of a class action

suspends the applicable statute of limitations as to all asserted members of the class who would have been parties); *see also Vertrue v. Vertrue, Inc. (In re Vertrue Mktg. & Sales Practices Litig.)*, 719 F.3d 474, 480 (6th Cir. 2013). Thus, the correct calculation is from the date Plaintiffs discovered the defect to November 21, 2019. With respect to Count VI, all Plaintiffs' respective states toll the statute of limitations for fraud claims until discovery of the fraud.[7] Here, that would clearly be the moment

---

[7] California: "The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal Code Civ Proc § 338. South Carolina: "[T]he cause of action in the case not considered to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." S.C. Code § 15-3-530(7). Washington: "An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." Rev. Code Wash. (ARCW) § 4.16.080. North Carolina: "For relief on the ground of fraud or mistake; the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." N.C. Gen. Stat. § 1-52(9). South Dakota: "In an action for relief on the ground of fraud the cause of action shall not be deemed to have accrued until the aggrieved party discovers, or has actual or constructive notice of, the facts constituting the fraud." S.D. Codified Laws § 15-2-3. New York: "an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. 213(8). Michigan: "If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations." Mich. Comp. Laws § 600.5855. Illinois: "If a person liable to an action fraudulently conceals the cause of such action from the

of the discovery of the defect, not the moment of purchase. Nearly all of the Plaintiffs

discovered the defect within the past two years.[8]

Third, GM's statute of limitations defense necessarily relies on facts outside of

the Complaint. As discussed above, Plaintiffs have alleged, with sufficient

particularity under Rule 9(b), the "when" of GM's fraud. GM now claims that the

limitations period bars Plaintiffs' claims without the benefit of any discovery. The

circumstances surrounding Plaintiffs' discovery of the defect and GM's wrongdoing

---

knowledge of the person entitled thereto, the action may be commenced at any time
within 5 years after the person entitled to bring the same discovers that he or she has
such cause of action, and not afterwards." 735 Ill. Comp. Stat. 5/13-215. New Jersey:
"In case of fraud  the period of limitation, in equity, begins to run only from the dis-
covery of the fraud or the time when, by reasonable diligence, it could have been dis-
covered." *Lopez v. Swyer,* 62 N.J. 267, 275 n. 2, 300 A.2d 563 (1973). Indiana: "If a
person liable to an action conceals the fact from the knowledge of the person entitled
to bring the action, the action may be brought at any time within the period of limita-
tion after the discovery of the cause of action." Ind. Code Ann. § 34-11-5-1. Connecti-
cut: "If any person, liable to an action by another, fraudulently conceals from him the
existence of the cause of such action, such cause of action shall be deemed to accrue
against such person so liable therefor at the time when the person entitled to sue
thereon first discovers its existence." Conn. Gen. Stat. § 52-595. Florida: "An action
founded upon fraud … must be begun within the period prescribed in this chapter,
with the period running from the time the facts giving rise to the cause of action were
discovered or should have been discovered with the exercise of due diligence …" Fla.
Stat. § 95.031.

[8] Plaintiffs' alleged dates of discovery are listed here: Ambrose (NJ) Sept. 18, 2020,
¶¶ 67-68; Barnes (FL) mid-2018, ¶ 72; Chapman (WA) Sept. or Oct. 2019, ¶ 78;
Cirignano (SC) about 35,000 miles in 2019, ¶ 87; Faussett (CA) late fall 2019, ¶ 92;
Keller (NC) Apr. 27, 2020, ¶ 106; Kobel (NY) around Aug. 8, 2020, ¶ 110; Lawson
(IN) summer of 2019, ¶ 117; Lutsk (CA) in 2019, ¶ 146; Magallanes (CA) Sept. 12,
2019, ¶ 123; Meir (CT) approximately 80,000 miles, ¶ 128; Ostrander (CA) Jan. 2017,
¶ 133; Overturf (SD) Aug. 6, 2020, ¶ 140; Woronko (MI) July 2019, ¶ 154.

17

are fact issues that cannot be resolved by GM's Motion and, thus, are improperly raised at this stage.

Fourth, the statute of limitations is an affirmative defense on which GM bears the ultimate burden of proof. *Rembisz v. Lew*, 590 F. App'x 501, 503 (6th Cir. 2014). GM has not demonstrated that it is entitled to a statute of limitations defense or that it should not be estopped from asserting such a defense.

Plaintiff Meier's Connecticut Unfair Trade Practice Act (CUTPA) in Count X is tolled by a continuing course of conduct. *RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 676 F. Supp. 2d 9, 35 (D. Conn. 2009).[9] The Connecticut Plaintiff (Meir) pleaded that GM continued to obfuscate the nature of the defect and has otherwise pled the elements of fraudulent concealment with particularity. ¶ 129. Under Florida law, the statute of limitations for Plaintiff Barnes' claim under the Florida Unfair and Deceptive Trade Practices Act (FUDTPA) in Count XI commences when "the facts giving rise to the cause of action were discovered or should have been discovered." *Speier-Roche v. Volkswagen Grp. Of Am. Inc.*, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014). The Florida Plaintiff (Barnes) pleaded that the defect did not manifest

---

[9] Plaintiff Meir's fraudulent concealment claim is also tolled. "Doctrines have developed—both at common law and by statute—to alleviate certain of such unfairness by creating exceptions to the "occurrence" rule." *Slainte Invs. Ltd. P'ship v. Jeffrey*, 142 F. Supp. 3d 239, 255 (D. Conn. 2015); *see also Blanchette v. Barrett*, 229 Conn. 256, 265 (1994). As detailed above, Plaintiff Meir has pled the elements of fraudulent concealment with particularity.

until 2018. ¶ 72.[10] The limitations period for Plaintiff Kobel's claim under New York's General Business Law in Count XV be equitably tolled by wrongful or fraudulent conduct. *See Statler v. Dell, Inc*., 841 F. Supp. 2d 642, 647 (E.D.N.Y. 2012). The New York Plaintiff (Kobel) pleaded that the defect did not manifest until 2020. ¶ 110. Consistent with the currently outstanding questions of fact, a motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon a statute of limitations." *Engleson v. Unum Life Ins. Co. of Am.*, 723 F.3d 611, 616 (6th Cir. 2013) (citation omitted).

### d.  *The Economic Loss Rule is Inapplicable*

GM briefly argues that the so-called "economic loss doctrine" bars recovery for the Plaintiffs from California, Florida, Michigan, New Jersey, and South Carolina, but this is not so. GM ignores well-established exceptions to the doctrine from all these states. Indeed, just weeks ago, this Court rejected a nearly identical argument brought by GM, finding that "federal courts have recognized that significant public policy concerns weigh heavily against the overextension of this limiting doctrine." *Francis*, 2020 WL 7042935, at *17. As the Court explained in *Francis*, the economic loss rule is a limited doctrine that applies to "negligence and other unintentional torts, not intentional fraud," and "has not been extended beyond embracing specific causes of

---

[10] *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig*., 2017 WL 1345576, at *5 (N.D. Cal. Apr. 12, 2017) and *In re Takata Airbag Prods. Liab. Litig*., 255 F. Supp. 3d 1241, 1258 (S.D. Fla. 2017).

action that are not analogous to fraudulent omission." *Id*.[11] This Court should follow

the *Francis* decision and similarly reject GM's argument here.[12]

### e. *Plaintiffs' Michigan Consumer Protection Act (MCPA) Claim is Not Precluded*

Plaintiffs' MCPA claim is not precluded. "[T]he MCPA specifically places the

burden of proving an exemption from the MCPA on the person claiming the

exemption." *Giura v. Bartolomeo*, 2010 WL 3767563, at *2 (Mich. Ct. App. Sept. 28,

2010). "[H]istorically, application of the exception by Michigan courts has involved

careful parsing of the 'authorizing statute's language to ensure that it covers the

transaction at issue." *Francis*, 2020 WL 7042935, at *20 (quoting *In re GM Air*, 406

F. Supp. 3d at 642–43). Here, however, "GM asserts this position without elaboration,

and it merely posits, without citing any statutory authority, that car sales in Michigan

---

[11] *See also Lalli v. FCA US, LLC (In re FCA US, LLC Monostable Elec. Gearshift Litig.)*, 446 F. Supp. 3d 218, 225 (E.D. Mich. 2020) ("[T]he economic loss rule will not bar claims of fraudulent inducement such as are asserted here, where the defendant allegedly concealed facts to encourage a plaintiff to buy its product.") *In re MyFord Touch*, 46 F. Supp. 3d at 965-66 (holding economic loss doctrine did not apply to fraudulent concealment claim); *Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, 2018 WL 1805516, at *6 (N.D. Cal. Apr. 16, 2018) ("Fraudulent inducement is a well-recognized exception to the economic loss rule" in California).
[12] This Court has also previously declined to rule on the economic loss rule issue at the pleadings stage. *In re GM Air*, 406 F. Supp. 3d 618, 640 (E.D. Mich. 2019) ("postponing a decision on GM's economic-loss-doctrine arguments until full briefing at the summary judgment stage will not substantially enlarge or impact the scope of discovery or the course of proceedings.").

are specifically authorized under the Michigan Vehicle code." *Id.*[13] Because GM's

argument is undeveloped here, as it was in *Francis* and *In re GM*, the court should

"not dismiss the MCPA claim as insufficiently pleaded." *Id*.

### f. *Plaintiffs' Allegations on Behalf of the South Carolina Class Are Proper*

GM contends that Plaintiffs' class action allegations under the South Carolina

Unfair Trade Practices Act (SCUPTA) must be dismissed. However, Plaintiff

Cirignano can pursue a SCUTPA class action under Rule 23 of the Federal Rules of

Civil Procedure. Rule 23 is procedural in nature and displaces state procedural

prohibitions to the contrary. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*

*Co.*, 559 U.S. 393, 416-17 (2010) (holding New York class action bar did not preclude

federal courts sitting in diversity from adjudicating Rule 23 class actions governed by

New York substantive law); *In re FCA US LLC*, 355 F. Supp. 3d at 599-600. The most

recent pronouncement on this issue by this Court properly found that the state law

prohibition on class actions under the law of South Carolina and other states to be

"procedural rule[s] that do[] not affect the viability of class claims brought in a federal

forum." *See Francis*, 2020 WL 7042935, at *19 (collecting authority).

---

[13] GM's authority is distinguishable. *Jimenez v. Ford Motor Credit Co.*, 2015 WL 9318913 (Mich. Ct. App. Dec. 22, 2015) involved "[t]he sale of the motor vehicle by a licensed dealer," *id.* at * 7, but this suit is against the manufacturer, GM. The only case GM cites not relying on *Jimenez*—*Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 WL 9775018, at *3 (E.D. Mich. Oct. 21, 2016)—did not meaningfully address why the transaction at issue was "explicitly sanctioned" by state law, and the court's holding was largely predicated on presently irrelevant federal regulations. *Id.*

### B. Plaintiffs' Warranty Claims are Well-Pled

#### 1. *The Time and Mileage Limitations in GM's Warranty are Unconscionable and Unenforceable*

The time and mileage limitations set out in GM's warranty are unconscionable and unenforceable, such that Plaintiffs are not precluded from asserting express warranty claims.[14] Where, as here, "a manufacturer is aware that its product is inherently defective, but the buyer has no notice of [or] ability to detect the problem, there is perforce a substantial disparity in the parties' relative bargaining power … thereby rendering such [warranty] limitations unconscionable and ineffective." *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1989).

Plaintiffs' well-pled allegations support a finding of unconscionability. Specifically, Plaintiffs allege GM knew about the latent defect in the electronic power steering torque assist sensor at various points, including when it designed and manufactured the electronic power steering torque assist sensor and performed pre-sale testing and validation (¶¶ 43, 48); from previous GM vehicles containing a defective torque sensor assembly *(*¶¶ 44-46); and at least hundreds of consumer complaints *(*¶¶ 49-54, 62). Notwithstanding GM's knowledge, it did not inform Plaintiffs of the defect at the time of purchase or any time thereafter, and GM has

---

[14] All Plaintiffs, except for Plaintiff Barnes presented their vehicles at GM dealerships and/or inquired about repairs to alleviate the defect. (¶¶ 68, 73, 79, 88, 95, 101, 106, 112, 118-119, 124, 129, 134, 141-142, 148, 149-150, 155-156).

vigorously refused to acknowledge the defect. ¶ 64. Moreover, the defect was not known to or reasonably discoverable by the Plaintiffs prior to purchase or lease and without experiencing the defect first-hand and exposing themselves to an unreasonable safety risk. ¶ 61. Indeed, Plaintiffs were precluded from bargaining for a warranty that would have covered the defect because they did not know of its existence in the first instance. ¶ 64. And as a manufacturer and sophisticated corporation, it is self-evident that a gross disparity in bargaining power existed between GM and Plaintiffs.

Plaintiffs' unconscionability allegations are well pled, consistent with numerous cases involving vehicle manufacturers. *See, e.g.*, *WEL Cos., Inc. v. Haldex Brake Prods. Corp*., 467 F. Supp. 3d 545, 566-68 (S.D. Ohio June 16, 2020); *Duncan v. Nissan N. Am., Inc.*, 305 F. Supp. 3d 311, 320-21 (D. Mass. 2018); *Skeen v. BMW of N. Am., LLC*, 2014 WL 283628, at *12 (D.N.J. Jan 24, 2014) (compiling cases)).[15]

Moreover, GM's caselaw does not grapple with the impropriety of dismissing allegations of unconscionability at the motion to dismiss stage in light of Section 2-302(2) of the UCC—adopted by Plaintiffs' home states— which requires "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present

---

[15] *See also Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 621-23 (M.D.N.C. 2006); *Lohr v. Nissan N. Am., Inc.*, 2017 WL 1037555, at *6–7 (W.D. Wash. Mar. 17, 2017); *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *10 (S.D.N.Y. Dec. 16, 2011); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 823 (S.D. Ohio 2012).

evidence as to its commercial setting, purpose, and effect to aid the court in making the determination." Plaintiffs are entitled to such an "opportunity" following discovery, because Plaintiffs have a made prima facie showing of unconscionability. *See McQueen v. Yamaha Motor Corp., U.S.A.*, 2020 WL 5630006, at *10 (D. Minn. Sep. 21, 2020) (deferring determination on unconscionability "until the parties have had the opportunity to submit evidence regarding the disclaimer's commercial setting, purpose, and effect."); *Duncan*, 305 F. Supp. 3d at 320 (denying motion to dismiss "[i]n light of the UCC's instruction"); *Weber Auto. Corp. v. Metaldyne LLC*, 2020 WL 1968669, at *6 (Mich. App. Apr. 23, 2020) ("the trial court's failure to hold an evidentiary hearing [on unconscionability] was error"); *In re Porsche*, 880 F. Supp. 2d at 822, n.6 ("The UCC expressly requires that courts not make substantive findings of unconscionability at the motion to dismiss stage").

### 2. *The Plaintiffs' Implied Warranty Claim is not Limited to the Time and Mileage Limitations of the Express Warranty*

As explained in Section (B)(1), *supra*, the warranties' stated durational limits are unconscionable and ineffective. Accordingly, Plaintiffs' implied warranty claims are cognizable regardless of when the defect manifested.

### a. *Plaintiffs' Vehicles are Not Merchantable*

The electronic power steering torque assist sensor defect is plainly a safety hazard, rendering the Class Vehicles unmerchantable. "Federal courts considering implied warranty claims in auto defect litigation consistently have held that an

24

automobile is merchantable or fit for its intended purpose only where it is able reliably to operate in a 'safe condition' or to provide 'safe transportation.'" *Francis*, 2020 WL 7042935, at *8 (collecting cases). As in *Francis*, "GM has not identified any decisions hewing to a contrary rule in any of the states at issue." *Id.* at 30.

Here, the Class Vehicles are neither safe nor defect-free: as Plaintiffs' allegations and the numerous complaints to NHTSA reveal, drivers were concerned for their safety and/or recounted incidents where their lives were potentially at risk due to the manifestation of the defect. ¶¶ 54, 93 (Plaintiff Faussett easily could have "ended up in oncoming traffic, where vehicles are coming at 55 miles per hour" when the defect manifested); ¶¶ 123-24 (Plaintiff Magallanes experienced the defect on the freeway, pulled over, and had the vehicle towed for repair). Plaintiffs' vehicles are unfit for their intended purposes by compromising safety and thus unmerchantable. Other courts have agreed, over GM's objection, that risk of sudden loss of power steering renders a vehicle unmerchantable. *See, e.g., Aguilar v. General Motors LLC*, 2013 WL 5670888, at *7 (E.D. Cal. Oct. 16, 2013).

Even if mere functionality was the relevant standard, the Class Vehicles nevertheless fail to meet it. Plaintiff Faussett, for example, began experiencing the defect "a few times a week." ¶ 92. For Plaintiffs Grujic and Lutsk, manifestation of the defect was "virtually a daily occurrence." ¶¶ 100, 147. Plaintiff Ostrander estimates that he experienced the signature symptoms of the defect "*hundreds* of

times." ¶ 133. No reasonable individual would characterize a defect that *constantly* inhibits a driver's ability to control a vehicle as "of average quality in the industry." ECF No. 30, PageID.1378 (citing *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 WL 9775018, at *2 (E.D. Mich. Oct. 21, 2016)).

Moreover, the continued operation of Class Vehicles (out of necessity or otherwise) does not connote merchantability. *See, e.g.*, *Persad*, 2018 WL 3428690 (rejecting defendant's argument that a car that could emit exhaust odor and gases was fit for its ordinary purposes finding that, at the motion to dismiss stage, the plaintiffs need only plausibly allege that the defect at issue impacts the safe operation of the car and that the continued use of the class vehicle was not fatal to the claim); *In re Whirlpool Corp*, 45 F. Supp. 3d at 714 (rejecting argument that Plaintiffs could not prove implied warranty claims simply because they continued using defective product).[16] Similarly, "[a] vehicle that operates for some time after purchase may still be deemed unfit for ordinary purposes if its components are so defective that the vehicle becomes inoperable within an unacceptably short period of time." *Keegan v.*

---

[16] Defendant's contrary authority is inapposite. *Weidman v. Ford Motor Co.*, 2019 WL 3003693, at *4-5 (E.D. Mich. July 10, 2019) simply held that in that case, where the defect did not manifest, plaintiffs had failed to plead their implied warranty claims. *Id*. But, as shown above, the large majority of cases in this District have held that a vehicle is unmerchantable in similar circumstances to those here. The plaintiffs in *Tae Hee Lee v. Toyota Motor Sales*, *U.S.A., Inc.,* 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) relied on a study showing the relevant vehicles did not exhibit the defect. The defect in *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013) "did not compromise the vehicle's safety" or "implicate the [vehicle's] operability."

*Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 948 (C.D. Cal. 2012); *see also Roe v. Ford Motor Co.*, 2019 WL 3564589, at *12 (E.D. Mich. Aug. 6, 2019) (rejecting Ford's position that the vehicles were merchantable and holding that "cars are supposed to get people from A to B; but they, like other durable goods, are expected to work for a good while" and it is reasonable to expect a vehicle "to run 75,000 miles (to pick a number)" without needing a critical component repaired").

Finally, GM's argument that Plaintiffs' have merely articulated a legal conclusion is incorrect. The AC is replete with allegations showing the dangerous nature of the defect and drivers' safety concerns. *See, e.g.*, ¶¶ 66-157. Even *GM* concedes the sudden loss of power steering is dangerous. ¶ 4 ("If power steering assist is lost or reduced" there is a "greater risk of a crash.").

### i. Plaintiffs' Claims Are Not Barred for Lack of Notice

First, for most of the states at issue, Plaintiffs were not required to provide GM with pre-suit notice. Specifically, pre-suit notice to a vehicle manufacturer is not required in Connecticut, New Jersey, Florida, North Carolina, and Washington. *See Recalde v. Werner & Pfleiderer*, 1997 WL 200753, at *1 (Conn. Super. Ct. Apr. 14, 1997); *Strzakowlski v. Gen. Motors Corp.*, 2005 WL 2001912, at *3 (D.N.J. Aug. 16, 2005); *In re MyFord Touch*, 46 F. Supp. 3d at 975-979 (applying Florida law); *Cats v. Monaco RV, LLC*, 2016 WL 5253204, at *4 (W.D. Wash. Sept. 22, 2016); *Allen v. American Honda Motor Co., Inc.,* 264 F.R.D. 412, 429 (N.D. Ill. 2009) (North

Carolina). Additionally, in Michigan, Illinois,[17] and New York the filing of a complaint may provide sufficient notice. *See In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1111 (S.D. Ind. 2001) (Michigan); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 492 (1996) (Illinois); *Panda Capital Corp. v. Kopo Intern., Inc.,* 662 N.Y.S.2d 584, 586–87 (1997) (New York).

In any event, GM's notice argument fails because Plaintiffs gave multiple forms of notice. First, on November 12, 2019, Plaintiff Woronko sent a pre-suit letter to GM and never received a response. ¶ 195; *see id.*, Ex. 22 (ECF No. 26-23). The letter notified GM that it "breached and continue[s] to breach express and implied warranties" for Class Vehicles, which was defined as 2015-2016 Chevrolet Colorado and GMC Canyon Vehicles.[18] This letter and Plaintiff Woronko's complaint were provided to GM nearly a year before the remaining named Plaintiffs brought their claims in the AC on October 23, 2020, giving abundant opportunity for GM to honor warranty claims and/or reimburse Plaintiffs and Class members for their out-of-pocket repair costs.

Additionally, on June 26, 2020, almost fourth months before bringing their

---

[17] In Illinois, the notice requirement is also satisfied when, as alleged here, a manufacturer is aware of the defect. *See In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 799-800 (N.D. Ill. 2016).

[18] GM argues that notice was not reasonable with respect to Plaintiff Woronko because it was sent a week before the initial Complaint was filed. But that is an evidentiary argument on the reasonableness of notice, which is premature at this stage. *See Canfield v. FCA US LLC*, 2019 WL 1089798, at *7 (D. Del. Mar. 8, 2019); *Persad*, 2018 WL 3428690, at *4.

claims in the AC, Plaintiffs Fausset, Lutsk, and Magallanes sent a letter to GM, but they also never received a response. ¶ 255. That letter notified GM of Plaintiffs' intent to file suit for all purchasers of Class Vehicles for claims including violations of the "Magnusson-Moss Warranty Act, ... implied warranties (including the implied warranty of merchantability) and other statutes and common law obligations, unless you provide the relief sought herein." The letter demanded GM, among other things, "reimburse Plaintiffs and the putative class members for the reduced or diminished value of their Vehicles as well as any repair costs incurred by Plaintiffs and putative class members." This further satisfies any notice requirement.

Moreover, "[d]efendant was provided notice of the breach when Plaintiffs sought repair" and "took affirmative steps that would have informed Defendant of the issue." *See Canfield*, 2019 WL 1089798, at *7. All Plaintiffs, except for Plaintiff Barnes, presented their vehicles at GM dealerships and/or inquired about repairs to alleviate the defect. ¶¶ 68, 73, 79, 88, 95, 101, 106, 112, 118-119, 124, 129, 134, 141-142, 148, 149-150, 155-156. Some Plaintiffs even directly contacted GM. Connecticut Plaintiff Meir contacted GM to inquire about repairs and was told that any repair would not be covered under warranty. ¶ 129. North Carolina Plaintiff Keller contacted GM directly about the defect on or around April 27, 2020. ¶ 106.

Finally, whether a defendant was notified timely (if notice is required) "is inappropriate to decide at the pleading state—whether Plaintiffs gave timely notice is

a question of fact for the jury to decide." *Persad*, 2018 WL 3428690, at * 4 (*citing In re MyFord Touch*, 46 F. Supp. 3d at 977-78; *Francis*, 2020 WL 7042935, at *12. Even if it is determined after discovery that proper notice was not given, "dismissal for want of notice is inappropriate where, as here, the defendant has made no showing that it was prejudiced by being deprived of a seasonable opportunity to remedy the problem." *Francis*, 2020 WL 7042935, at *11 (citing *City of Wyoming v. Proctor & Gamble Co.*, 210 F. Supp. 3d 1137, 1157-58 (D. Minn. 2016)); *see also In re FCA US LLC*, 280 F. Supp. 3d at 1012-13 (collecting cases).

> ii. <u>Plaintiffs' Warranty Claims are Not Barred by Statutes of Limitations</u>

The statute of limitations for all class members was tolled – at the very least – when the original complaint was filed on November 21, 2019 (not October 23, 2020 as alleged by GM, ECF No. 30, PageID.1383-84). Plaintiffs reiterate that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54, 103 S. Ct. 2392, 2397, 76 L. Ed. 2d 628 (1983); see also *American Pipe*, 414 U.S. at 538.

Moreover, the UCC provides that the date of accrual for warranty claims is when the breach occurred or *should have been discovered*, not the date of delivery:

A breach of warranty occurs when tender of delivery is made, except that

30

where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance ***the cause of action accrues when the breach is or should have been discovered***.

U.C.C. § 2-725(2) (emphasis added).[19]

Further, GM fails to consider that Plaintiffs' claims are tolled pursuant to the equitable doctrine of fraudulent concealment. "The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." *Philips*, 2016 WL 1745948 at *13 (citation and internal quotations omitted).

Plaintiffs have set out the circumstances of Defendant's fraudulent conduct with particularity. *See* Section A(1), *infra*. Moreover, Plaintiffs substantiate GM's knowledge, and further allege that Plaintiffs could not have reasonably known about the defect prior to its manifestation. (*See, e.g.*, ¶¶ 43, 44-46, 48-54, 62, 168-169). Plaintiffs' claims are tolled accordingly. *See, e.g., Sater v. Chrysler Grp., LLC*, 2015 WL 736273, at *9 (C.D. Cal. Feb. 20, 2015) (fraudulent concealment adequately pled where defendant "intentionally kept" plaintiff ignorant of information, "continued to manufacture" product without disclosing defect, and delay in discovery was reasonable at least until vehicle was recalled); *Elward v. Electrolux Home Prod., Inc.*, 264 F. Supp. 3d 877, 888 (N.D. Ill. 2017) (Fraudulent concealment sufficiently pled where defendant "continuously failed to disclose a defect that [defendant] knew

---

[19] The relevant dates Plaintiffs discovered the Defect are listed in footnote 8, *supra*.

existed and knew was "not reasonably discoverable by a purchaser" (citations omitted); *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 423 (S.D.N.Y. 2015).

      iii.    <u>Plaintiffs' Implied Warranty Claims are Not Precluded for Lack of Privity</u>

GM contends that warranty claims in seven states must be dismissed for lack of privity.[20] ECF No. 30, PageID.1385. But, in California, North Carolina, Florida, and Washington privity is not required where, as here, the Plaintiffs are contemplated end-users of the Class Vehicles. *See In re MyFord Touch*, 46 F. Supp. 3d at 983-85 (acknowledging the third-party beneficiary exception under California, North Carolina, and Washington law); *Keegan*, 838 F. Supp. 2d at 947-48 (stating that in California the purchaser of a vehicle may maintain implied warranty claim against manufacturer when vehicle is purchased from authorized dealership); *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014) (acknowledging the third-party beneficiary exception under Florida law). For the same reasons, privity is met under New York law, under which an inference of agency between a dealer and manufacturer is sufficient. *See Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 881 (N.D. Cal. 2018).

Connecticut does not require privity where "there is no alternative remedy

---

[20] GM admits that Plaintiffs each allege that they purchased their Class Vehicles from GM-authorized dealerships. ECF No. 30, PageID.1385.

available to the plaintiff." *Kinzer v. Remington Arms Co., Inc.*, 2010 WL 11451121, at

*4 (W.D. Okla. Sept. 1, 2010) (citing *Pro Con Inc. v. Coastal Wall Systems, Inc.* 2004

WL 2289598 (Conn. Super. Sept. 13, 2004)). Illinois' privity requirement is satisfied

if the manufacturer provides a written warranty that satisfies the Magnuson-Moss

Warranty Act. *See Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1030-31 (Ill.

1988); *Szajna v. Gen. Motors Corp.*, 503 N.E.2d 760, 770 (Ill. 1986).

Finally, New York recognizes an exception where the product in question is a

"thing of danger." Specifically, "where an article is of such a character that when used

for the purpose for which it is made it is likely to be a source of danger to several or

many people if not properly designed and fashioned, the manufacturer as well as the

vendor is liable, for breach of law-implied warranties, to the persons whose use is con-

templated." *Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 191 (N.D.N.Y.

2009) (citing *Hubbard v. Gen. Motors Corp.,* 1996 WL 274018, at *5 (S.D.N.Y. May

22, 1996)). Here the defect is inherently dangerous, rendering privity extraneous. *See,

e.g.*, ¶¶ 4, 6, 7, 11, 110-111. *See, e.g., Hubbard*, 1996 WL 274018, at *5 (holding that

"a vehicle equipped with a defective braking system is likely to be a source of danger

when driven.").

     iv.   <u>Plaintiffs State a Viable Song-Beverly Act Claim</u>

For the reasons stated in Section B(2)(a)(ii), *supra*, Plaintiffs' claim is tolled by

equitable doctrine of fraudulent concealment. ¶¶ 225-232; *Philips*, 2016 WL 1745948,

at *14 ("fraudulent concealment tolling applies to claims brought under the Song-Beverly Act.")

v. Plaintiffs State Viable Magnuson-Moss Warranty Act Claims

Claims under the Magnuson-Moss Warranty Act "'stand or fall with . . . express and implied warranty claims under state law.'" *In re FCA US LLC*, 280 F. Supp. 3d at 1017 (quoting *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015)). *See also, Id.* ("plaintiffs adequately have made out their claims for breaches of express and implied warranties under state law, and their claims under the Magnuson-Moss Warranty Act, which 'stand or fall' with the state law claims, therefore also are viable"). Here, Plaintiffs have alleged viable express and implied warranty claims under state law. Therefore, Plaintiffs' claims under the Magnuson-Moss Warranty Act are also viable.

## C. Plaintiffs' Unjust Enrichment Claims are Well Pled

Plaintiffs can plead an unjust enrichment claim in the alternative to a written warranty as expressly contemplated by Fed. R. Civ. P. 8(d)(2). *See Francis*, 2020 WL 7042935, at *23. Indeed, "alternative pleading of contract and quasi-contract claims routinely is permitted, and particularly is appropriate, where the defendant explicitly disclaims the availability of a contractual remedy, as it has done here by vigorously asserting its warranty coverage defense." *Id.* (citing *Solo v. UPS Co.*, 819 F.3d 788, 797 (6th Cir. 2016)).

GM's argument that Plaintiffs bought directly from dealers, rather than GM, is also immaterial because Plaintiffs have pled the elements of the claim, including that a benefit was conferred on GM. Nothing more is required. *See id.* at *23; *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d at 1008-09 (refusing to dismiss unjust enrichment claims where plaintiffs purchased vehicles from third-party dealers because plaintiffs had alleged that they had conferred a benefit on defendant).

### D. Plaintiffs Can Properly Plead Nationwide Class Claims

Plaintiffs' and Class Members' allegations are plainly sufficient to allege standing to assert Counts I-III, VI, and VII. GM's challenge as to the standing of unnamed class members is not appropriate at this motion to dismiss stage and is, instead, a premature challenge to class certification. "Once his [Article III] standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends *solely* on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (emphasis added); *see also Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015)). Stated differently, "[i]t is more logical to consider named plaintiffs' ability to raise other state-law claims as a question of commonality, typicality, and adequacy under Rule 23, rather than a question of standing" because "[g]enerally, the named plaintiffs in a class action do not have individual standing for all of the claims that they raise,

because one individual does not have standing to claim injury to another individual. Therefore, standing analysis cannot address whether one plaintiff should be able to bring claims on behalf of others." *In re: McCormick & Co., Inc.*, 217 F. Supp. 3d 124, 144 (D.D.C. 2016), *amended on reconsideration sub nom. In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 218 (D.D.C. 2017). Thus, whether a plaintiff can represent a nationwide class depends on satisfying Rule 23. GM's argument is premature and the majority of courts in this District have concluded that whether named plaintiffs are able to assert nationwide claims on behalf of unnamed class members is appropriately addressed at class certification.[21]

As this Court has explained, deferring the question of standing to represent a nationwide class to class certification is appropriate in cases like the present one. *See Francis*, 2020 WL 7042935, at *23; *Counts*, 237 F. Supp. 3d at 587 ("For several reasons, the cases which defer the standing inquiry regarding the claims advanced on behalf of unnamed class members until class certification provide the best approach."). The crux of Plaintiffs' claims—and thereby the crux of the discovery sought by Plaintiffs—will center on the decisions made centrally by GM with respect to the power steering assist. If GM designed and/or manufactured a defective power

---

[21] *See, e.g.*, *Counts v. General Motors, LLC*, 237 F. Supp. 3d 572, 587 (E.D. Mich. 2017) (citing *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 999–1000 (E.D. Mich. 2014); *Gamboa*, 381 F. Supp. 3d at 884; *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1088 (E.D. Mich. 2018); *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 641-642 (E.D. Mich. 2019); *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 667–68 (E.D. Mich. 2008).

steering assist for the Class Vehicles, every Class Vehicle will presumably have the same defect regardless of the state in which it was manufactured or sold. *See Counts*, 237 F. Supp. 3d at 587–88. Plaintiffs allege they and the Class have been injured in the same manner, from the same conduct by GM. *Id.* As Plaintiffs clearly have standing to bring claims on their own behalf, "[t]he question of whether [he] may bring claims on behalf of the unnamed class members is an issue that is properly addressed via a motion for class certification." *Id.*; *see also In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d at 999–1000.

GM's authority is distinguishable as they involve class certification decisions made on developed records, not prematurely on a motion to dismiss. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *see also Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 521 (6th Cir. 2015) (quoting *Pilgrim*, 660 F.3d at 947–48) (explaining that the *Pilgrim* decision was due to the specific facts in that case). Similarly, *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1018, was decided on appeal after class certification determinations were made on a developed record, not at the pleading stage.

## IV.  CONCLUSION

For the foregoing reasons, GM's motion to dismiss should be denied.

DATED: December 23, 2020                    Respectfully submitted,

                                                    */s/ E. Powell Miller_____*

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
William Kalas (P82113)
**THE MILLER LAW FIRM, P.C.**
950 West University, Suite 300
Rochester, Michigan 48307
Tel: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com
wk@millerlawpc.com

Nicholas A. Migliaccio
(E.D. Michigan Bar No. 29077)
Jason S. Rathod
(E.D. Michigan Bar No. 18424)
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

Daniel E. Gustafson
Daniel C. Hedlund
David A. Goodwin
Mickey L. Stevens
**GUSTAFSON GLUEK PLLC**
220 South Sixth Street #2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dgoodwin@gustafsongluek.com
mstevens@gustafsongluek.com

*Attorneys for Plaintiffs and the Putative
Class*

38

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 23, 2020 I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

/s/ *E. Powell Miller*_____
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com
