# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ROBERT AMBROSE, SCOTT BARNES, RICHARD CHAPMAN, RYAN CIRIGNANO, CHRIS FAUSSETT, MILAN GRUJIC, DAVID KELLER, JOHN KOBEL, DANIEL LAWSON, STEPHEN LUTSK, LORI MAGALLANES, NOAM MEIER, ERIC OSTRANDER, ROBERT OVERTURF, and MIKE WORONKO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC, a Delaware corporation,<br><br>Defendant. | **Case No. 4:19-cv-13449**<br><br>Honorable Stephanie Dawkins Davis<br>Magistrate Judge Elizabeth A. Stafford |

**GENERAL MOTORS LLC'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED
CLASS ACTION COMPLAINT AND TO STRIKE CLASS ALLEGATIONS**

# **TABLE OF CONTENTS**

Table of Contents .................................................................................................................. ii

I. Introduction ................................................................................................................ 1

II. Plaintiffs Fail to State Viable Warranty Claims ........................................................ 2

    A. The Time and Mileage Limitations are not Unconscionable. ....................... 2

    B. Plaintiffs' Vehicles are Merchantable. ............................................................ 4

III. Certain Plaintiffs Failed to Provide Pre-Suit Notice to GM. ..................................... 5

IV. Plaintiffs' Warranty Claims are Barred by the Applicable Statutes of Limitations. 6

V. Plaintiffs' Warranty Claims Fail for Lack of Privity. ................................................. 7

VI. California Plaintiffs' Song-Beverly Claims Fail. ........................................................ 8

VII. Plaintiffs Fail to Plead Fraud with Particularity. ........................................................ 8

VIII. Plaintiffs' Fraudulent Concealment Claims Fail. ..................................................... 10

    A. Plaintiffs cannot establish GM's pre-sale knowledge of the alleged defect. ............................................................................................................ 11

    B. GM did not have a duty to disclose. .............................................................. 12

    C. Michigan Plaintiff Cannot Recover Under the MCPA. ............................... 13

IX. Plaintiffs Fail to State a Viable Claim for Unjust Enrichment. ............................... 13

**I.      INTRODUCTION**

Plaintiffs claim that GM breached its warranty obligations and certain statutory and common-law duties by failing to disclose an alleged defect that Plaintiffs do not plausibly identify. Plaintiffs' opposition brief confirms that, despite having been given a second bite at the apple, Plaintiffs cannot allege plausible, specific facts to support their theories.

Plaintiffs' warranty claims are doomed because Plaintiffs cannot rebut the fact that the purported defect manifested outside of the warranty period and that they never sought and were denied warranty coverage by GM. Nor can they harmonize the fact that they have driven (and continue to drive) their vehicles far beyond the warranty limits—for years and tens of thousands of miles—with their claims that the putative class vehicles were not suitable for their underlying purpose, let alone dangerous.

Plaintiffs' fraud claims fare no better. They are based entirely on conclusory allegations about the circumstances of Plaintiffs' vehicle purchases, but fall well short of Rule 9(b)'s heightened pleading requirements. Among other failures, Plaintiffs make no attempt to describe their own, individualized experiences. This District has previously rejected these types of conclusory allegations, most recently in *Hall v. Gen. Motors, LLC*, 2020 WL 1285636 (E.D. Mich. Mar. 18, 2020) (Leitman, J.). The Court should reject these flawed arguments yet again and dismiss this case with prejudice.

In their opposition, Plaintiffs largely ignore *Hall* and instead lean heavily on Judge Lawson's recent opinion in *Francis v. General Motors, LLC*, 2020 WL 7042935, at *2

1

(E.D. Mich. Nov. 30, 2020). But *Francis* bears little relation to this case, based on one insurmountable difference: the *Francis* plaintiffs experienced the claimed defect within the applicable warranty period. Apart from that, the circumstances in *Francis* could not be more different—there, the plaintiffs advanced a specific mechanical theory of how the claimed defect caused their problems, alleging specific facts that plausibly suggested the existence of a mis-calibration in GM's transmission systems based on the more-than-sixty service bulletins GM issued to its dealerships over a five-year period, acknowledging a variety of issues related to the defect. *Id.* at *3. There are no comparable allegations here.

In sum, Plaintiffs aim to exploit GM's recall of a small number of MY2015 Colorado/Canyons, for a specific electrical problem relating to the power steering function, and extend it to cover essentially ***any*** steering-related electrical problem, in ***any*** Colorado/Canyon, purchased at ***any*** time by ***any*** consumer. But extraordinary claims require extraordinary facts—and Plaintiffs' pleadings do not and cannot measure up. For these reasons and others set forth below, Plaintiffs' claims should be dismissed.[1]

## II. PLAINTIFFS FAIL TO STATE VIABLE WARRANTY CLAIMS

### A. The Time and Mileage Limitations are not Unconscionable.

Relying on the Fourth Circuit's opinion in *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1989), Plaintiffs allege that GM's warranties are unconscionable based

---

[1] Given the various named Plaintiffs, claims, and jurisdictions at issue, GM has attached a chart as **Exhibit 1**, which summarizes the Counts for the Court's convenience and reference.

2

on a "substantial disparity in the parties' relative bargaining power[.]" ECF No. 32, PageID.1560. But as GM has "aptly point[ed] out" in previous cases, the car market is among the most competitive in the world. *In re GM Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 629 (E.D. Mich. 2019) ("*Air Conditioning*"). If Plaintiffs were unhappy with GM's warranties, they had numerous other OEMs from which to choose. And courts overwhelmingly reject the argument that consumers have unequal bargaining power due to a lack of alternative warranty limits. *Id.* (citing *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, at *20 (D.N.J. Oct. 9, 2013)).

Moreover, the Fourth Circuit has made clear that *Carlson* does not support the broad proposition that the *terms* of a warranty are substantively unconscionable solely because one party conceals certain information during the bargaining process. *Hart v. Louisiana-Pac. Corp.*, 641 F. App'x 222, 228–29 (4th Cir. 2016) ("additional allegations" beyond a manufacturer's knowledge of a defect "are necessary to support [plaintiffs'] theory of unconscionability."). Here, unlike in *Carlson*, Plaintiffs have not plausibly alleged that GM had pre-sale knowledge of the alleged defect. *See* ECF No. 30, PageID.1393. But even if Plaintiffs had plausibly alleged GM's pre-sale knowledge, such knowledge, standing alone, does not render unconscionable the durational limits in GM's warranties. *See Hall*, 2020 WL 1285636, at *13; *Air Conditioning*, 406 F. Supp. 3d at 628-30 (a seller's presale knowledge of a defect alone is insufficient to show unconscionability). As here, the Hall plaintiffs' claims arose from an alleged defect occurring outside the applicable

3

warranty period. The Hall court relied on long-established precedent to find that this fact precluded the plaintiffs' warranty claims and their argument that GM's warranty was unconscionable. This Court should do the same.

### B. Plaintiffs' Vehicles are Merchantable.

Plaintiffs claim that their vehicles are unmerchantable because the alleged defect creates a safety hazard. ECF No. 32, PageID. 1562-1563. But the basic tenet of merchantability is whether a product will pass in trade, and no Plaintiff here alleges that they have tried to sell their vehicle but could not because of this alleged defect. Moreover, implied warranties for vehicles "can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation." *Am. Suzuki Motor Corp. v. Sup. Ct.*, 44 Cal. Rptr. 2d 526, 529 (Cal. Ct. App. 1995).

Plaintiffs fail to state an implied warranty claim because they do not allege that the defect has forced them to stop driving their cars, rendered them incapable of being sold, or made them unsuitable for their ordinary purpose of providing transportation. *See Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (dismissing implied warranty claim because plaintiffs did not allege they stopped using their vehicles). Here, Plaintiffs have driven (and continue to drive) their vehicles for many years and for tens of thousands of miles. There is no implied warranty claim on these facts. *Sheris v. Nissan N. Am. Inc.*, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) (collecting cases and citing the "weight of authority, from courts across the country").

4

### III. SOME PLAINTIFFS FAILED TO PROVIDE PRE-SUIT NOTICE TO GM.

Plaintiffs' purported notices of alleged breaches, supposedly provided to GM by Plaintiffs Woronko, and the California Plaintiffs (Fausset, Lutsk, and Magallanes), are insufficient because they do not serve the underlying purpose of the notice requirement. Indeed, Woronko claims that he sent a letter to GM on November 12, 2019—one week before filing the initial Complaint. The California Plaintiffs claim to have sent a letter to GM on June 26, 2020—after Plaintiffs filed their original Complaint. Failure to give requisite notice justifies dismissal because consumers must provide the seller an opportunity to cure before suing. *See e.g.*, *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 929 (N.D. Cal. 2012); *Rysewyk v. Sears Holdings Corp.*, 2015 WL 9259886, at *4-5 (N.D. Ill. Dec. 18, 2015); *Johnston v. PhD Fitness, LLC*, 2018 WL 646683, at *3 (E.D. Mich. Jan. 31, 2018) (adequate pre-suit notice by letter must be received sufficiently in advance of complaint to allow for investigation of claims and pursuit of settlement). Pre-suit notice is not a formality—it allows time for the parties to negotiate and propose settlements, including potential cure, without litigation. "And if litigation is inevitable, pre-suit notice at least gives the breaching party some chance to investigate the factual basis for any claims against it—especially ones involving long-ago sales." *Johnston*, 2018 WL 646683, at *3.

The requirement that GM receive reasonable notice and an opportunity to cure forecloses any argument by Plaintiffs that the initial Complaint somehow provided GM with notice—GM had no chance to investigate the factual basis for any claims against it

before the case was filed. For the same reason, the letters allegedly sent by Plaintiffs cannot suffice as pre-suit notice. Woronko's letter to GM's CEO and President, a mere week before filing this case, was not sufficiently in advance of the Complaint to allow for investigation of claims and pursuit of settlement. *See id.* Likewise, when the California Plaintiffs sent their letter, this case was already pending, eliminating any opportunity for GM to cure. Apart from these failures, Plaintiffs ignore the fact that the remaining Plaintiffs all failed to provide GM with any pre-suit notice.

## IV. PLAINTIFFS' WARRANTY CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS.

Several Plaintiffs' warranty claims are time-barred based on the face of the Complaint. ECF No. 30, PageID.1383-1384. Plaintiffs contend that, under the UCC, the date of accrual for warranty claims is when the breach occurred or should have been discovered, not the date of delivery. But Plaintiffs are mistaken. Under the UCC, "[a] cause of action accrues when the breach occurs, *regardless of the aggrieved party's lack of knowledge of the breach*," and the breach occurs "when tender of delivery is made," except where a warranty "explicitly extends to future performance." U.C.C. § 2-725(2) (emphasis added). The discovery rule therefore does not apply to warranty claims; otherwise, subsection (2) would be superfluous. Since Plaintiffs have not alleged that GM's express warranty extends to future performance, the discovery rule does not apply.

Moreover, Plaintiffs contend that GM's alleged concealment of the defect tolls the statute of limitations. ECF No. 32, PageID.1569. Plaintiffs, however, have not satisfied

6

Rule 9(b), which applies to their tolling theory. *See, e.g.*, *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1133 (C.D. Cal. 2010). For example, Plaintiffs do not describe their individual experiences regarding GM's supposed concealment. Nor do they specify what was omitted, who omitted it, or when the omissions supposedly should have been communicated. *See generally* ECF No. 30, PageID.1388-1392. Accordingly, Plaintiffs' allegations fall short of the 9(b) standard—and cannot operate to toll the limitations period.

## V. PLAINTIFFS' WARRANTY CLAIMS FAIL FOR LACK OF PRIVITY.

Plaintiffs assert that privity is not required in California, North Carolina, Florida, and New York[2] because the Plaintiffs in those states were third-party beneficiaries of GM's agreements with its authorized dealerships. ECF No. 32, PageID.1570-1571. But this theory fails because Plaintiffs plead no facts describing any contract between GM and its dealerships, let alone establishing that ***each Plaintiff*** was a direct third-party beneficiary of any such contract. Plaintiffs mainly rely on *In re MyFord Touch Consumer Litig.*, which relied on *Gilbert v. Steelform Contracting Co.*, 145 Cal. Rptr. 448, 450 (Cal. Ct. App. 1978). But *Gilbert* involved a construction contract for which the court did "not need to decide the issue of privity" because the plaintiff was a third-party beneficiary of the contract between the general contractor and the subcontractor. *Xavier v. PMUSA Inc.*, 787 F. Supp.

---

[2] Plaintiffs claimed that Washington does not require privity, citing *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014). ECF No. 32, PageID.1570. But that case does involve any claims arising under Washington law or by Washington plaintiffs.

7

2d 1075, 1083 (N.D. Cal. 2011). "No reported California decision has held that the purchaser of a consumer product may dodge the privity rule by asserting that he or she is a third-party beneficiary of the distribution agreements linking the manufacturer to the retailer who ultimately made the sale." *Id*.

Courts addressing the privity requirement in Florida, New York, and North Carolina have reached the same conclusion. *See Gonzalez v. Mazda Motor Corp.*, 2017 WL 3283957, at *6 (N.D. Cal. Aug. 1, 2017) (a North Carolina plaintiff must show the existence of a valid contract between two other persons and that the contract was entered into for his direct, and not incidental, benefit); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 953–54 (C.D. Cal. 2012) (FL and NY require privity, and plaintiffs failed to show privity because they failed to describe relationship between GM and its dealerships).

## VI. CALIFORNIA PLAINTIFFS' SONG-BEVERLY CLAIMS FAIL.

As to the California Plaintiffs' Song-Beverly claims, those Plaintiffs assert that the claims are tolled by the equitable doctrine of fraudulent concealment. ECF No. 32, PageID.1571. But these claims fail because Plaintiffs have not satisfied Rule 9(b), which applies to the tolling theory. *See, e.g., Yumul*, 733 F. Supp. 2d at 1133.

## VII. PLAINTIFFS FAIL TO PLEAD FRAUD WITH PARTICULARITY.

Plaintiffs allege that they were misled into buying their vehicles, yet not one of them has identified any communication they received and reviewed, nor have they stated whether GM provided them with any such communication, let alone when, where, or how

8

such communications took place. *See generally* ECF No. 26, PageID.641-668, ¶¶ 65–157. This falls well short of Rule 9(b)'s basic particularity requirement.

Moreover, Plaintiffs never even try to comply with Rule 9(b) for their individual claims, apparently assuming that the fact that this case is a putative class action somehow relieves them of their obligation to plead their individual claims with particularity. When assessing whether a complaint alleges fraud with particularity, the question is whether the named plaintiffs—not some hypothetical composite of putative class members—have adequately identified the who, what, when, where, and how of the alleged fraud. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009). *Kearns* focused exclusively on whether the named plaintiff—not absent or hypothetical class members—met the requirements of the rule. *Id.* at 1125–26.

Viewed in this context, the Plaintiffs have failed to satisfy Rule 9(b) as to their individual transactions. Neither the Complaint nor Plaintiffs' brief explains what any Plaintiff was specifically told, who told it to them, and when, where, and how these communications took place. Indeed, simply referring to representations contained on GM's websites does not show particularity absent an explanation of where, when, and how ***each Plaintiff*** viewed the representations, was impacted and defrauded by it, etc.[3] *See*

---

[3] The representations Plaintiffs cite merely state that the Colorado/Canyon has a 41-foot turning radius and that "power steering provides easier maneuverability in tight situations." ECF No. 32, PageID.1547.

9

*Kearns*, 567 F.3d at 1126 (allegations insufficient because they did not specify the particular marketing or sales materials that the plaintiff was exposed to).

To be sure, the same problem afflicts Plaintiffs' fraudulent-concealment theory. Plaintiffs have failed to identify, for their individual transactions, "where the omitted information should or could have been revealed" and "representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Eisen v. Porsche Cars N. Am., Inc.*, 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012); *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 256 (6th Cir. 2012) (Rule 9(b) required plaintiffs' fraudulent omission claim to articulate "precisely what was omitted" from communications to which plaintiffs were allegedly exposed.).

Finally, while Plaintiffs claim that they have "provided examples of marketing materials where the defect could have been disclosed," that is far from what Plaintiffs actually pled in the Complaint. ECF No. 32, PageID.1546. Rather, they note that GM made certain representations on its website relating to the 2015 Canyon/Colorado, but never describe, for instance, whether each Plaintiff had access to these sites and when, and whether and to what extent each Plaintiff relied on information he or she obtained from these sites in purchasing their respective vehicles. Plaintiffs' factual allegations do not approach this level of specificity and thus fail to comply with the Rule 9(b) standards.

## VIII.   PLAINTIFFS' FRAUDULENT CONCEALMENT CLAIMS FAIL.

### A.     Plaintiffs cannot establish GM's pre-sale knowledge of the defect.

Contrary to Plaintiffs' suggestion, Rule 9(b) does not excuse them from making particularized allegations that GM was aware of the alleged defect at the time of purchase. Pointing to GM's prior recall, its centralized testing of steering components, the alleged backorder of replacement parts for Class Vehicles, and the customer "complaints," Plaintiffs essentially argue that a hodgepodge of sources relating to various vehicles, problems, and circumstances, together with a host of inferential leaps, can establish GM's pre-sale knowledge of the alleged defect. *See* ECF No. 32, PageID.1388-1389; 1547-1548.

But this argument misses the mark. The issue is whether GM had pre-sale knowledge that all of the vehicles had the same specific alleged defect on which Plaintiffs' claims are based—not various issues with various causes affecting some vehicles. A prior NHTSA-supervised recall with a defined vehicle population does not demonstrate that vehicles outside that population are defective—in fact, it suggests the opposite. Allegations that certain parts were backordered, even if true, means little here because Plaintiffs fail to draw any connection to the alleged defect, and any part backorders can result from a variety of different causes. Generic testing allegations are routinely rejected by courts in similar circumstances. *See, e.g., Greene v. BMW of N. Am.*, 2012 WL 5986461, at *7 (D.N.J. Nov. 28, 2012). As to the "customer complaints," Plaintiffs allege no facts showing that they involve the same defect alleged here and, in any event, the complaints largely post-date Plaintiffs' vehicle purchases and involve relatively few vehicles compared to the number

11

of Colorado/Canyons that GM sold. These allegations, individually or collectively, do not establish GM's knowledge of or attempts to conceal the alleged defect. *Burdt v. Whirlpool Corp.*, 2015 WL 4647929, at *4 (N.D. Cal. Aug. 5, 2015) (requiring "more than an undetailed assertion that the testing must have revealed the alleged defect"); *Hall*, 2020 WL 1285636, at *3 (plaintiffs' reliance on a handful of NHTSA complaints could not "support a plausible inference GM had pre-sale knowledge" of the alleged defect).

Last, Plaintiffs concede GM's argument that Plaintiffs purchased their vehicles before publication of the cited complaints, and cannot use post-purchase events to infer knowledge at time of sale. *See* ECF No. 30, PageID.1396; *Mekani v. Homecomings Fin., LLC,* 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010). Indeed, of the several hundred "complaints" that Plaintiffs cite, only 26 were posted in 2015 and 2016. Most of these occurred after Plaintiffs had already purchased their vehicles and thus could not have been known to GM at the time of those purchases. *See e.g.*, ECF No. 26-16, PageID.1068-1081; ECF No. 26-17, PageID.1082-1091; ECF No. 26-20, PageID1104-1317.

### B. GM did not have a duty to disclose.

Plaintiffs' claim that GM had a duty to disclose the alleged defect but have failed to allege that GM was silent in response to a specific pre-sale inquiry from any Plaintiff regarding power steering. *Matanky v. General Motors, LLC*, 370 F. Supp. 3d 772, 794 (E.D. Mich 2019). Plaintiffs' claim also fails because a duty to disclose based on superior knowledge arises only where the parties engage in an arm's length transaction—there is

no direct transaction between GM and Plaintiffs because they purchased their vehicles from independent third parties. *See Garcia v. Chrysler Grp., LLC*, 127 F. Supp. 3d 212, 237 (S.D.N.Y. 2015) (duty arises only for "a seller in an arm's-length transaction—and Chrysler is not alleged to have sold plaintiffs their vehicles"). Accordingly, Plaintiffs cannot establish that GM had any duty to disclose.[4]

### C. Michigan Plaintiff Cannot Recover Under the MCPA.

Plaintiffs challenge GM's assertion that "car sales in Michigan are specifically authorized under the Michigan Vehicle Code." ECF No. 32, PageID1558. But Plaintiffs ignore the fact that numerous courts share this view. Indeed, the Michigan Supreme Court found that the key inquiry is "whether the general transaction is specifically authorized" under the Code. *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 519–20 (Mich. 2007). Courts have repeatedly found that the "general transactions" here are motor vehicle sales and that such sales are exempt. *See, e.g., Rosenbaum v. Toyota USA, Inc.*, 2016 WL 9775018, at *3 (E.D. Mich. Oct. 21, 2016) (claims based on "Toyota's advertising of the Prius and its miles-per-gallon estimate" are exempt from the MCPA); *Feliciano v. Gen. Motors LLC,* 2016 WL 9344120, at *3 (S.D.N.Y. Mar. 31, 2016).

### IX. PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR UNJUST ENRICHMENT.

---

[4] Plaintiffs also claim that GM had a duty to disclose due to conveying a false impression. But Plaintiffs plead no facts indicating that GM conveyed any false impression nor do they articulate what that supposedly false impression actually was.

13

Plaintiffs claim that they can plead unjust enrichment in the alternative to a written warranty. ECF No. 32, PageID.1572. But a party may not plead unjust enrichment in the alternative where the existence of an express contract is undisputed. *See Air Conditioning*, 406 F. Supp. 3d at 634. Here, GM does not contest the existence of the warranty, or that the warranty terms are an enforceable agreement. Plaintiffs nevertheless allege that they conferred a benefit on GM and that "[n]othing more is required" to support their unjust enrichment claim. ECF No. 32, PageID.1573. Not so. Plaintiffs have not pled that they purchased their vehicles from GM, nor any other specific facts regarding any benefit they conferred on GM. *Demaria v. Nissan N. Am., Inc.*, 2016 WL 374145, at *13 (N.D. Ill. Feb. 1, 2016) ("[the complaint] does not allege . . . that [plaintiff] purchased her car from Nissan, and it is, therefore, not clear that Nissan" received a benefit). Plaintiffs simply declare, in conclusory fashion, that they conferred a benefit "by purchasing the Vehicles at the full price," but fail to explain how that purchase conferred a benefit on GM. *See Id.* (plaintiffs failed to allege a direct benefit where they claimed only that Nissan's fraud allowed it to "obtain monies rightfully belonging" to plaintiffs). The authority that Plaintiffs themselves rely on requires much more than conclusory statements. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 977, 1008-09 (E.D. Mich. 2017).

January 15, 2021                                  Respectfully submitted,

                                            /s/ Mohamed M. Awan

        Jeffrey K. Lamb (P76738)
        Mohamed M. Awan (P77402)
        Laura Biery (P82887)
        Nicholas A. Burandt (P84113)
        HONIGMAN LLP
        2290 First National Building
        660 Woodward Avenue
        Detroit, MI 48226-3506
        Telephone: (313) 465-7000
        Facsimile: (313) 465-7405
        jlamb@honigman.com
        mawan@honigman.com
        lbiery@honigman.com
        nburandt@honigman.com

        *Counsel for General Motors LLC*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 15, 2021 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

 /s/Mohamed M. Awan
Mohamed M. Awan

*Counsel for General Motors LLC*